### CRICKET S. S. CO. v. PARRY.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 124.

1. APPEARANCE ⊚⇒9(7)—BOND FOR RELEASE OF ATTACHMENT DOES NOT WAIVE RESERVED OBJECTION TO JURISDICTION.

A defendant, by giving bond to release his property from attachment, does not waive a good objection to jurisdiction over his person, if it be reserved; but, if the objection is not taken, it is waived, and the appearance becomes general.

2. COURTS ⊚⇒280—OBJECTION TO JURISDICTION OF FEDERAL COURT ON SOLE GROUND OF RESIDENCE WAIVES OBJECTION ON ANOTHER GROUND.

Objection to jurisdiction of a federal court on the sole ground that plaintiff, an alien, was not a resident of the district, held a waiver of objection to the jurisdiction on the ground that suit could be brought only in the district of defendant's residence.

3. SEAMEN ⊚⇒29(4)—SHIPOWNER LIABLE FOR INJURY BY APPLIANCE KNOWN BY SEAMAN TO BE DEFECTIVE.

A shipowner cannot avoid liability for injury to a seaman by a defective and dangerous appliance, on the ground that the seaman knew of the defect when he shipped.

4. SEAMEN ⊚⇒29(4)—DO NOT ASSUME RISK FROM IMPROPER APPLIANCES.

A shipowner, which equips its vessel with improper and dangerous appliances, when proper ones cannot be obtained, does so at its own risk, and not at the risk of the seamen.

5. SEAMEN ⊚⇒29(5)—JURY'S PROVINCE TO REDUCE DAMAGES FOR CONTRIBUTORY NEGLIGENCE IN ACTION AT LAW.

In an action at law by a seaman to recover damages for personal injury, an instruction that, if the jury found plaintiff chargeable with contributory negligence, it was their province to make a proportionate reduction of the damages found, held correct.

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by John P. Parry against the Cricket Steamship Company. Judgment for plaintiff, and defendant brings error. Affirmed. Certiorari denied 252 U. S. ——, 40 Sup. Ct. 345, 64 L. Ed. ——.

Kirlin, Woolsey & Hickox, of New York City (C. Keating, John M. Woolsey, and Harry D. Thirkield, all of New York City, of counsel), for plaintiff in error.

Silas B. Axtell, of New York City (Van Vechten Veeder, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. This is a writ of error to a judgment entered on the verdict of a jury against the defendant, a corporation of the state of California, in favor of the plaintiff, an alien, for personal injuries sustained by him November 12, 1917, at Frontera, Mexico, when a quartermaster on board the defendant's steamship Cricket.

April 11, 1918, the action was begun in the District Court of the United States for the Eastern District of New York by serving the summons and complaint on the master of the steamship, filing them in the clerk's office and attaching the vessel, lying at Astoria in the port of New York. April 13 the defendant entered a special appearance for the purpose of releasing the steamship and for making a motion to set aside the attachment and dismiss the complaint. On the same day the steamship was released, the plaintiff accepting the defendant's bond in the sum of $20,000.

May 21 the District Judge, on defendant's motion, entered an order for the examination of the plaintiff under section 873 of the Code of Civil Procedure as to his place of residence; the time of defendant to answer or otherwise plead being extended for 20 days. June 18 the defendant moved to vacate the attachment for various irregularities and also to dismiss the complaint on the grounds:

"(a) That at the time of filing the summons and complaint herein plaintiff had not established a bona fide residence and was not domiciled in the county of Kings, state of New York.

"(b) That this action is improperly brought in the District Court of the United States for the Eastern District of New York."

September 2, 1918, the motion was denied; the court finding that the plaintiff had proved himself to be a resident of the Eastern District of New York. We agree in this.

The transcript of record as originally filed contained none of these preliminary proceedings. The bill of exceptions, which relates only to proceedings at the trial, could not refer to them at all. No exception was required to be taken, but they should have been brought up with the writ of error. Regular practice required the defendant to apply under our rule 16 for a certiorari for diminution of the record; but, having filed the omitted parts with us in the form of an appendix, we will consider the proceedings as if the proper practice had been followed.

October 14 the defendant filed its answer on the merits, also setting up for a third defense the objection as to plaintiff's residence originally made:

"The plaintiff, John P. Parry, is not now and never has been a bona fide resident of the county of Kings, state of New York, and at the time of the commencement of this action was not, and is not now, domiciled in the county of Kings, state of New York, and defendant denies that this court has jurisdiction, either of the plaintiff to this action or of the cause itself."

January 21, 1919, the case came on for trial before Judge Garvin; the defendant's counsel stating at the opening:

"Before you make your opening statement, Mr. Axtell, I would like to put a statement on the record. In this case the defendant is a foreign corporation, was sued by the plaintiff, who was an alien, and the question was once raised as to whether the United States District Court for this district had jurisdic-

tion. Judge Chatfield decided that against the defendant. I am not asking for any review of that decision, but I want to put on the record that we are appearing here solely because of that decision of Judge Chatfield, and that our appearance is not voluntary, but in pursuance of this ruling, and that we reserve whatever rights we have in appearing."

[1] There is no assignment of error relating to the question of jurisdiction. No doubt as the plaintiff claims, a defendant by giving bond to release his property from attachment appears in the suit with the same effect as if he had been served with process. But releasing his property from an illegal attachment does not waive a good objection to jurisdiction over his person, if it be reserved. Pacific Nat. Bank v. Mixter, 124 U. S. 721, 728, 8 Sup. Ct. 718, 31 L. Ed. 567. It amounts in such a case at most to a special appearance. When, however, the objection is not taken, it is waived, and the appearance becomes general.

[2] The complaint shows on its face that the plaintiff was an alien and the defendant a corporation of California. No objection was taken under section 51 of the Judicial Code (Comp. St. § 1033) that the defendant was not suable in the District Court for the Eastern District of New York, or anywhere but in the district of which it was an inhabitant, until the hearing in this court. The objection raised was as to the right of the plaintiff to bring his action in the Eastern district because he was not a resident of the district. It seems to us clear that the defendant waived the objection that it was not suable in the Eastern district of New York. This is assumed throughout the opinion of the court in Big Vein Coal Co. v. Read, 229 U. S. at page 32, 33 Sup. Ct. 694, 57 L. Ed. 1053.

This brings us to a consideration of the merits. The complaint charged the defendant with liability because the vessel was unseaworthy as to him in furnishing a $6/8''$ wire rope with a steel core for the drums of the winches. At the trial it was amended to charge unseaworthiness in the construction of the winches also.

The winches in question ran parallel to each other fore and aft, facing the after hatch. The plaintiff, sitting on a raised platform between them, started both by levers, one on the port and the other on the starboard side. While loading mahogany logs from a lighter into the hold, a bight or loop of the wire rope fell on the drum of the starboard winch, as it was coming light from the hold, caught him around the body, jerked the lever out of his hand, and threw him over the drum. His arm was so mangled by the piston rod of the winch that it had to be amputated, and he sustained other serious injuries. It is perfectly clear that a proper rope for the winch would have been a $5/8''$ wire rope with a hemp core because, being more flexible, it winds up tightly around the drum when coming up light from the hold. The fact that such loops and bights did occur, and were dangerous, was known before he shipped, both to the plaintiff and to the owners. There was some evidence that it was difficult to get the proper rope because of the war.

[3] The defendant contends that the plaintiff cannot recover because he shipped with knowledge of the condition complained of, and

because, so far as the wire rope is concerned, proper rope could not be obtained. Two decisions of this court are cited in support of the first proposition, Cunard S. S. Co. v. Smith, 255 Fed. 846, 167 C. C. A. 174; D., L. & W. R. R. Co. v. Tomasco, 256 Fed. 16, 167 C. C. A. 286. We do not think them applicable because the plaintiffs were shore servants, in the first a longshoreman, and in the second a railroad hand. We are considering the rights of seamen, who have constituted from early times a peculiar class. The unusual protection extended to them is reflected in the familiar saying that they are the wards of the admiralty. As to the second proposition, shipowners cannot justify furnishing them with defective and dangerous appliances on the ground that they knew of it. The remarks of Mr. Justice Brown in The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955, quoted by the defendant, are not to be understood as holding that defective and dangerous appliances are among the ordinary risks of the calling:

"Even the claims of humanity must be weighed in a balance with the loss that would probably occur to the owners of the ship and cargo. A seafaring life is a dangerous one, accidents of this kind are peculiarly liable to occur, and the general principle of law that a person entering a dangerous employment is regarded as assuming the ordinary risks of such employment is peculiarly applicable to the case of seamen."

The claim he was considering was that the master ought to have gone into an intermediate port to get surgical attendance for a sailor who had fallen from aloft in heavy weather. The injury was an accident pure and simple, necessarily attending the seaman's occupation.

[4] So, as to the second proposition, we think that vessel owners who sail their ships with improper appliances, when they cannot get proper ones, do so at their own risk, and not at that of the seamen. On this subject the court correctly charged as follows:

"If you find that the defendant used reasonable diligence in trying to procure ⅝-inch rope or hemp heart cable, and was unable to procure the same after due effort, and if you find that the use of the ¾-inch steel heart cable rendered the winch in question unseaworthy, the inability of the defendant to procure the ⅝-inch rope of hemp heart cable is not excused, as it was not thereby justified in causing the plaintiff to use an unseaworthy appliance without being liable for the consequences."

This seems to us in accordance with the view that the courts have taken throughout as to the relation of master and seaman.

[5] On the question of contributory negligence the court charged:

"Fourth. If the jury finds that plaintiff was guilty of contributory negligence, this need not be a bar to a verdict in his favor as in an ordinary case at common law; but they may adjust the damages as they see fit, and if they find that plaintiff was injured by reason of the unseaworthiness of the vessel, but that his own negligence partially contributed to the injury, they may take that fact into account in reduction of damages, thereby reducing the recovery to an extent proportionate with the extent of plaintiff's fault.

"I so charge."

"Mr. Marshall: I would like to ask your honor, in dealing with the question of divided damages, in case the jury find the plaintiff was at fault and so was the defendant, that they can divide the damages. I think that is a matter for the court to attend to, not for the jury in a case of this character; and if that question arises the jury should report to the court in a special verdict, that they find both the plaintiff and the defendant at fault, and that

therefore a division of the damages can only be made by the court under principles that it would be too long to explain to the jury.

"Mr. Axtell: There is no such procedure in a common-law action. A jury can only render a general verdict.

"The Court: That is the court's own judgment in the matter, and therefore the request made by the defendant is refused.

"Mr. Marshall: Exception."

We approve the charge. It was in strict accordance with, among others, our decision in John A. Roebling's Sons Co. v. Erickson, 261 Fed. 986, —— C. C. A. ——.

There being nothing to sustain the assignments relied on, the judgment is affirmed.