## THE MALCOLM BAXTER, Jr.

No. 459.  Argued April 16, 1928.—Decided May 21, 1928.

*Messrs. John M. Woolsey* and *Mark W. Maclay,* with whom *Messrs. Robert S. Erskine, Charles K. Carpenter,* and *John Tilney Carpenter* were on the brief, for petitioners.

The law as to deviation is important in this case, because the schooner *Malcolm Baxter, Jr.*, and her owner, if guilty of a deviation would be unable to rely on any clauses in the bill of lading or on any defense based on impossibility or frustration, but would be responsible to the cargo as an insurer for all the damages flowing from her failure to arrive at destination. *The Willdomino*, 272 U. S. 718; *St. Johns N. F. Shipping Corp'n v. S. A. Companhia etc.*, 263 U. S. 119; *Mobile etc. R. R. Co.* v. *Jurey*, 111 U. S. 584; *Lawrence v. Minturn*, 17 How. 111; *The Sarnia*, 278 Fed. 459; *Gibaud* v. *Great Eastern Ry. Co.*, 2 K. B. 426; *Thorley* v. *Orchis S. S. Co.*, 1 K. B. 660.

The owner's warranty of seaworthiness and its obligation to furnish a vessel ready and able to perform the voyage are absolute and of the very essence of every contract of affreightment. *The Tornado*, 108 U. S. 342; *The Edwin I. Morrison*, 153 U. S. 199; *The Willdomino*, 272 U. S. 718.

Reckless indifference to the condition of the vessel is tantamount to actual knowledge. *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417; *Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225.

The line of cleavage between justifiable and unjustifiable deviation of an unseaworthy ship depends on whether the deviation is caused by unseaworthiness within the privity and knowledge of her owner, or is due to unseaworthiness which was not within his privity or knowledge. *Kish* v. *Taylor*, [1912] A. C. 604; *The Turret Crown*, 284 Fed. 439, certiorari denied, 264 U. S. 591; *The Willdomino*, 272 U. S. 718; *St. Johns N. F. Shipping Corp'n* v. *Companhia etc.*, 263 U. S. 119; *The Henry W. Cramp*, 20 F. (2d) 321, certiorari denied, *sub nomine McDonald* v. *Rosasco*, 275 U. S. 561; *The Maine*, 8 F. (2d) 291; Cf. *The St. Paul*, 277 Fed. 99; *U. S. S. B.* v. *Bunge y Born, Ltd.*, [1925] H. L., 31 Com. Cas. 118.

A " deviation " is an unjustifiable failure of a shipowner to perform the contracted voyage, and may arise not only from a physical departure from the course of a voyage, but also from other causes, such as unreasonable delay, *Kemsley, Millbourn & Co.* v. *United States* 19 F. (2d) 441, *The Città di Messina,* 169 Fed. 472; or from the failure of a shipowner to furnish a vessel capable of performing. *The St. Paul,* 277 Fed. 99; *St. Johns N. F. Shipping Corp'n* v. *Companhia etc., supra; The Willdomino,* 272 U. S. 718; *Columbian Ins. Co.* v. *Catlett,* 12 Wheat, 383; *Hostetter* v. *Park,* 137 U. S. 30; *Audenreid* v. *Mercantile Mut. Ins. Co.,* 60 N. Y. 482; *Mount* v. *Larkins,* 8 Bing. 108; *The Indrapura,* 171 Fed. 929.

In *The Henry W. Cramp,* 20 F. (2d) 320, the court reached an exactly opposite conclusion from the decision below in the case at bar.

The " Restraint of Princes " clause in the bill of lading does not constitute a defense, because the shipowner's negligence in knowingly sending the ship to sea in an unseaworthy condition brought her within the operation of the restraint invoked as a defense.

Exceptions in a bill of lading of a common carrier do not exempt it from liability, if it appears that the damage, although *prima facie* due to an excepted cause, was occasioned by the culpable negligence of the carrier. *Clark* v. *Barnwell,* 12 How. 272; *Transportation Co.* v. *Downer,* 11 Wall. 129; *Herman* v. *Compagnie Generale Transatlantique,* 242 Fed. 859; *The Glenfruin,* 10 P. D. 108; *The Caledonia,* 157 U. S. 124; *Atlantic Shipping Co.* v. *Dreyfus & Co.,* [1922] 2 A. C. 250; *Tattersall* v. *The Nat'l Steamship Co.,* 12 Q. B. D. 297.

The breach of warranty of seaworthiness was the effective and continuing cause of frustration, to which the embargo was only incidental. *United States* v. *Hall,* 6 Cranch 171; *Bailiffs* v. *Trinity House,* L. R. 5 Exch. 204;

*Davis* v. *Garrett,* 6 Bing. 716; *Williams* v. *Vanderbilt,* 28 N. Y. 217; *Green-Wheeler Shoe Co.* v. *Chicago, R. I. & P. R. R. Co.,* 130 Ia. 123; *Michaels* v. *N. Y. Central R. R. Co.,* 30 N. Y. 564; *Condict* v. *Grand Trunk R. R. Co.,* 54 N. Y. 500; *Railway Co.* v. *Kelly,* 91 Tenn. 699; *Stevens* v. *B. & M. R. R. Co.,* 1 Gray 277; *Central Trust Co.* v. *E. Tenn. R. R. Co.,* 70 Fed. 764; *Constable* v. *Nat'l S. S. Co.,* 154 U. S. 51; *The Caledonia,* 157 U. S. 124; *Allanwilde Transport Corp'n* v. *Vacuum Oil Co.,* 248 U. S. 377.

The rule that a shipowner may not defend under a bill of lading exception of " restraint of princes " if the ship-owner's own fault or negligence has in fact brought the " restraint " into operation, is well illustrated by the case of *Dunn* v. *Donald Currie & Co.,* 8 Com. Cas. 33 (1902). See *The Henry W. Cramp,* 20 F. (2d) 320; *Varagnolo* v. *Partola Mfg. Co.,* 209 App. Div. 347, affirmed 239 N. Y. 621.

The defense of impossibility of performance involves historically and, indeed, necessarily an equitable doctrine, and it can properly be invoked only when it would be unjust for the plaintiff to recover damages for the defendant's failure to perform his contract. The failure of plaintiff to perform an essential covenant or condition of his contract, precludes him from securing equitable relief, to which otherwise he might have been entitled. *Kelsey* v. *Crowther,* 162 U. S. 404; *Marble Co.* v. *Ripley,* 10 Wall. 339; *Willard* v. *Tayloe,* 8 Wall. 557; *Hansbrough* v. *Peck,* 5 Wall. 497; *Montana Water Co.* v. *City of Billings,* 214 Fed. 121; *Shubert* v. *Woodward,* 157 Fed. 47; *Taussig* v. *Corbin,* 142 Fed. 660; *Ohio Steel Fence Co.* v. *Washburn Mfg. Co.,* 26 Fed. 702; *Smith* v. *Spencer,* 81 N. J. Eq. 389; III Williston, Contracts, §§ 1959, 3329; *Allanwilde Transport Corp'n* v. *Vacuum Oil Co.,* 248 U. S. 377; *Texas Co.* v. *Hogarth Shipping Co.,* 256 U. S. 619; *Chicago, M. & St. P. Ry.* v. *Hoyt,* 149 U. S. 1;

*Varagnolo* v. *Partola Mfg. Co.,* 209 App. Div. 347, affirmed, 239 N. Y. 621; *The Henry W. Cramp,* 20 F. (2d) 320; *The Harriman,* 9 Wall. 161.

*Mr. T. Catesby Jones,* with whom *Messrs. D. Roger Englar* and *James W. Ryan* were on the brief, for respondent.

The breach of a warranty of seaworthiness does not preclude putting into a port of refuge for repairs if in the judgment of the master the safety or best interest of crew, ship or cargo requires it. *Kish* v. *Taylor,* [1912] A. C. 604; *The Turret Crown,* 297 Fed. 766; *Thessaloniki,* 267 Fed. 67; *Atlantic Shipping Co.* v. *Dreyfus & Co.,* [1922] A. C. 250.

The waiting at Havana after September 28, 1917, when further performance became illegal, did not constitute a deviation, because it was proper to wait a reasonable time for the sailing vessel prohibition order to be lifted, and because, even if the repairs had been completed earlier, it was illegal after September 28, 1917, for the vessel to continue the voyage. Illegality ended the contract on September 28, 1917. *Church* v. *Proctor,* 66 Fed. 240; Maclachlan, Law of Merchant Shipping, 6th ed., p. 445; *Ralli* v. *Compania Naviera Sota,* [1920] 2 K. B. 287; Carver, Carriage of Goods by Sea, 7th ed., § 237, pp. 343, 344; Clark, Contracts, p. 346; III Williston, Contracts, § 1759, p. 3066; *Id.,* § 1938, p. 3292; *Baily* v. *De Crespigny,* L. R. 4 Q. B. 180; *Heslop* v. *Jones,* 2 Chit. 550; *The Claveresk,* 264 Fed. 276; *Allanwilde Corp'n* v. *Vacuum Oil Co.,* 248 U. S. 377.

The petitioners' second point with reference to a contract clause of restraint of princes conditioned on the exercise of due diligence and their third point with reference to a defense of impossibility of performance or equitable frustration, also conditioned on due diligence, are both irrelevant because the defense here is illegality.

. The leaks constituting unseaworthiness did not cause the illegality. The contention is untenable that because unseaworthiness may have caused the 9% sea-water damage which was found on arrival at New York after the schooner had carried the cargo 2,000 miles, it was therefore the cause of the almost 100% loss of market and steamer transshipment damages resulting from the ending of the contract at Havana because of illegality. *St. Louis Ry. Co.* v. *Commercial Ins. Co.,* 139 U. S. 223; 22 R. C. L; *Atchison Ry. Co.* v. *Calhoun,* 213 U. S. 1; *The Santa Rita,* 173 Fed. 413; II Williston, Contracts, § 1906, pp. 2040–2043; Burdick, Law of Torts, 4th ed., pp. 38, 39; *Milwaukee etc., R. R. Co.* v. *Kellogg,* 94 U. S. 469; 33 Yale Law Jour. 690; *Parry* v. *University Co.,* 219 N. Y. 60; *Engle* v. *Director General,* 78 Ind. App. 537.

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioners, in July, 1917, shipped a cargo on the Schooner *Malcolm Baxter, Jr.,* owned by respondent, from New Orleans to Bordeaux, and prepaid the freight. The bill of lading stipulated " prepaid freight is to be considered as earned on shipment of goods and is to be retained by vessel's owner . . . if there be forced interruption or abandonment of the voyage, at a port of distress or elsewhere." In addition there was the usual clause exempting the vessel from " restraints of princes, rulers and peoples."

After departure from New Orleans the *Baxter* developed leaks due to unseaworthiness which caused her to put in at Key West, where she was surveyed. In order to effect the necessary repairs she was towed to Havana where she was unladen and repaired, remaining there for that purpose until January 14, 1918. Before the completion of the repairs the United States Export Administrative Board put into effect its ruling of Septem-

ber 28, 1917, that sailing vessels would not be permitted to clear for points beyond the war zone. This ruling remained in force when the repairs were completed, and the *Baxter*, being unable to secure a clearance for Bordeaux, took her cargo on board and proceeded to New York, where the petitioners libelled the vessel in the district court for southern New York to recover freight money, damages to cargo and damages for failure to perform the contract voyage from New Orleans to Bordeaux.

Respondent as owner filed a petition for exoneration and limitation of liability and enjoined further proceedings on the libels. Petitioners filed claims in the limitation proceedings, claiming damages as in the original libels, setting up the deviation and the abandonment of the voyage, by reason of the ship's unseaworthiness on sailing.

The district court denied the petition to limit liability, allowed the claim for freight money and for damages sustained by petitioners, including damage to cargo. A special master, appointed to take proof of damage, found that the measure of damages was the excess cost of the substituted carriage and incidental expenses, and in the case of goods which could not be sent forward the damage was measured by the difference between the value of the goods at the time when and in the condition in which they should have arrived at destination, and their value at the place where and in the condition in which they actually were received, less charges saved plus incidental expenses. Final decree was given to the petitioners for the damage as found.

The court of appeals for the second circuit upheld the ruling of the district court denying exoneration and limitation of liability but reversed the judgment, holding there could be no recovery of the prepaid freight or excess cost of transportation over prepaid freight; that the recovery of damages must be limited to actual damages to

cargo resulting from unseaworthiness, and the difference between the value of the cargo had it arrived in Bordeaux on a straight voyage on August 16, 1917, the date when the *Baxter* sailed, and on a voyage leaving Havana January 14, 1918, the date when the repairs were completed and the *Baxter* was ready for sea. The *Malcolm Baxter, Jr.,* 20 F. (2d) 304.

Both courts below agreed that the *Baxter* was unseaworthy on sailing and that respondent failed to exercise due diligence to ascertain her condition before sailing. This was sufficient ground for denying the petition for exoneration and limitation of liability under the Harter Act, Act of February 13, 1893, c. 105, 27 Stat. 445, and acts permitting limitation of liability to the vessel and pending freight. R. S. §§ 4282–4289. The correctness of this determination is not raised on the petition here, *Federal Trade Commission* v. *Pacific Paper Ass'n*, 273 U. S. 52, 66, but petitioners urge that the *Baxter's* putting in first at Key West and later at Havana must be deemed a voluntary deviation because due to the negligence of the owner in failing to discover the unseaworthiness and to make the vessel seaworthy before sailing.

Unseaworthiness alone or deviation caused by it displaces the contract of affreightment only in so far as damage is caused by the unseaworthiness. *The Caledonia,* 157 U. S. 124; *The Europa,* [1908], P. 84. *Thorley* v. *Orchis S. S. Co., Ltd.,* [1907], 1 K. B. 660; *Kish* v. *Taylor,* [1912], A. C. 604, 618. But if the deviation here is to be classed with voluntary deviations, respondent may not claim the benefit of the clauses of the bill of lading and is responsible for the cargo as insurer. *The Willdomino,* 272 U. S. 718; *St. Johns Corp.* v. *Companhia Geral. etc.,* 263 U. S. 119; *Mobile & Montgomery Ry.* v. *Jurey,* 111 U. S. 584; *Lawrence* v. *Minturn,* 17 How. 100; and see *The Indrapura,* 171 Fed. 929. In any case it is contended that respondent's negligent failure to discover the unsea-

worthiness of the vessel resulted in the delay which brought her within the operation of the embargo, and that the shipowners are for that reason liable for damages for all the delay, including that immediately resulting from the embargo.

Respondents had purchased the vessel about one month before she sailed. At that time she was unseaworthy, due to a 'hog' or camber in her keel, a structural weakness dangerous to the ship in heavy weather, which later caused the leak and made necessary the repairs at Havana. Following the purchase and before sailing from New Orleans a survey was made by the owner, which appears not to have disclosed her condition, but both courts below agree that the fact of her unseaworthiness could have been discovered by due diligence.

The evidence supports the finding of the court of appeals that the master of the *Baxter* " did not leave New Orleans with knowledge that he would have to make port for repairs, and honestly thought he could make the trip in safety and tried unsuccessfully to do so." The case is therefore not one where the master set sail with the knowledge that the deviation from the voyage, as described in the bill of lading, would ensue, and with the purpose and intent to deviate as in *The Willdomino, supra.* There the officers of the vessel, under direction of the owner, sailed from Ponta Delgada, bound for New York, all knowing that the supply of fuel was insufficient for the voyage and intending to take the vessel to North Sidney, and we held that the deviation under the circumstances was voluntary and inexcusable.

But here the deviation was not voluntary and the point to be determined is whether a like effect is to be given to a deviation to avoid perils of the sea, where the deviation would not have been necessary if the owner had used reasonable diligence to start the voyage with a seaworthy vessel.

No sufficient reason is suggested to us for thus extending the rule, nor do we perceive any. Petitioners, without

resort to it, are entitled to recover all damages caused by the unseaworthiness. The basis of the privilege of deviation to avoid perils of the sea, is humanitarian. See Carver, Carriage by Sea, (7th ed.) §§ 291, 292. To hold that the master whose ship is in a perilous position must choose between the hazard of continuing the voyage and gaining safety only by forfeiting the contract of affreightment would be a departure from that principle for no purpose except to give the shipper an added and unnecessary protection. " It is the presence of the peril and not its cause " which justifies the deviation. See *Strang* v. *Scott,* 14 App. Cas. 801. This is the conclusion reached in other circuits. *The Turret Crown,* 297 Fed. 766; *The Turret Crown,* 284 Fed. 439, 445; *The Turret Crown,* 282 Fed. 354, 360; see *The Thessaloniki,* 267 Fed. 67; and by the House of Lords in *Kish* v. *Taylor, supra,* holding that a deviation caused by unseaworthiness due to improper and negligent loading of the ship by the master did not displace the bill of lading. This rule we adopt as most consonant with the reason and consequences of the rule that a voluntary deviation displaces the contract of affreightment. It follows that the clauses of the bill of lading remain effective and that petitioners may not recover the freight money. *Allanwilde. Corp.* v. *Vacuum Oil Co.,* 248 U. S. 377.

But for all damages legally attributable to the breach of warranty of seaworthiness petitioners may recover. *The Caledonia, supra.* For the delay caused by the embargo alone petitioners may not recover, both because it was within the exception of the bill of lading and because, while it continued, performance of the contract of affreightment would have been illegal. See *Allanwilde Corp.* v. *Vacuum Oil Co., supra,* 385; Carver, Carriage by Sea, (7th ed.), §§ 237, 238, 343, 344.

It was the embargo and not the unseaworthiness of the vessel which delayed the voyage after the *Baxter* was repaired and ready for sea on January 14, 1918, and the unseaworthiness of the vessel did not cause the embargo.

But it is urged that it is enough to sustain the recovery for the failure to complete the voyage that it was the unseaworthiness, for which respondent was responsible, that brought the vessel within the excepted peril. This view, although not without support, *Green-Wheeler Shoe Co.* v. *Chicago, Rock Island, & Pac. R. R.*, 130 Iowa 123; *Michaels* v. *New York Central R. R.*, 30 N. Y. 564; *Condict* v. *Grand Trunk Ry.*, 54 N. Y. 500, does not generally prevail. See 2 Williston, Contracts, § 1906, and cases cited.

It was rejected by this Court in *Railroad Co.* v. *Reeves*, 10 Wall. 176. There negligent delay in the transportation of goods by the carrier brought them within the path of a flood, which caused their destruction. The court held that the flood and not the negligent delay was the proximate cause of the damage and that the rule *causa proxima non remota spectatur* applied to contracts of common carriers as to others. There has been no departure from this rule and we see no reason for departing from it now. See *Milwaukee & St. Paul Ry.* v. *Kellogg*, 94 U. S. 469; *Atchison, Topeka & Santa Fe Ry.* v. *Calhoun*, 213 U. S. 1, *The Indrapura, supra; The Lusitania*, 251 Fed. 715, 732; *The Turret Crown*, 282 Fed. 354, 360. There is no finding, nor is it suggested, that at the time when the contract of affreightment was entered into, or when the vessel broke ground, the embargo could reasonably have been foreseen, or that there were any special circumstances charging petitioners with the knowledge or expectation that the unseaworthiness or consequent delay would bring the vessel within its operation. The respondent having brought itself within the exception under its bill of lading, the burden is on petitioners to show that respondent's negligence was the cause of or contributed to the loss. *Railroad Company* v. *Reeves, supra*, 190; *Transportation Co.* v. *Downer*, 11 Wall. 129; see *Southern Ry.* v. *Prescott*, 240 U. S. 632, 641; *Kohlsaat* v. *Parkersburg & Marietta Sand Co.*, 266 Fed. 283, 285.

*Affirmed.*