**IVES v. UNITED STATES.**

**No. 337.**

Circuit Court of Appeals, Second Circuit.

May 2, 1932.

L. HAND, Circuit Judge, dissenting.

William F. Lally, of New York City (L. F. Fish, of New York City, of counsel), for appellant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Frederick H. Cunningham, of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

While engaged as a fireman on the S. S. Edenton, appellant made a voyage from New York to Norfolk. The port and starboard ventilators of the fire room were closed and frozen so that they could not be turned. The ventilator turned by means of a reach rod which extended from the fire room to the cowl at deck level, a distance of about 30 feet, at which point the cowl turned on cogs which meshed. At the lower end of the rod was a handle about 15 inches long. The ventilator was turned by pulling or pushing on this handle. The port ventilator could not be turned by the use of the handle. This condition, it is conceded, was known to the chief engineer and other officers of the ship, who promised to have it repaired at Norfolk. The appellant called attention of the second assistant engineer to the condition of the ventilator. Apparently, the term "frozen" means that the ventilator was stuck. Other seamen besides the appellant complained of its condition, and the chief and second assistant engineers admitted knowledge of it. Appellant says that on April 1st, when the ship arrived at Norfolk for a stop of 24 hours, he spoke to the second assistant engineer and asked when the ventilator would be fixed. On April 2d, the ship left Norfolk. Some few days thereafter and in the early morning of April 7th, the fire room was very hot, and appellant again spoke to the second engineer asking when the ventilator would be fixed, and was told, "If you were not so lazy, you would try and fix them yourself and try and get a pipe or something." Immediately thereafter, an oiler came into the fire room and told appellant that the second engineer had sent him to give appellant a hand in turning the ventilator. This oiler suggested getting a pipe, which was procured. He thereupon placed the pipe over the handle, and the oiler and appellant jointly endeavored to force open the port ventilator; the appellant pushing and the oiler pulling the pipe in an effort to turn it. Suddenly the pipe slipped off the handle and sprang back, due to the fact that the torsion which had been exerted on the reach rod was released, striking the appellant in the eye. As a result, he lost the sight of his left eye and the partial sight of his right eye.

The chief engineer testified that he directed the appellant to leave the ventilators alone and not attempt to fix them. But the ship was unseaworthy when she left port with the ventilators in this condition, and the shipowner is responsible and liable for injuries proximately caused thereby. Globe S. S. Co. v. Moss., 245 F. 54 (C. C. A. 6); Patton-Tully Transp. Co. v. Turner, 269 F. 334 (C. C. A. 6). The injury to appellant was due to the use of the pipe in the manner described and to the effort of attempting to turn the ventilator by this means, which would make the ship seaworthy. It was a negligent act to make the repair by attempting to open the ventilator in the manner described and as suggested by the second assistant engineer. With a reach rod as long as this, it should have been foreseen by the appellant's superior that the use of the pipe as described would cause a spring and incur the danger of a torsion of the rod. The leverage with the push and pull thereon would cause it. The nondelegable duty to use due and reasonable care to make and keep the ship seaworthy, as well as her appliances, was upon the owners during the voyage. The performance of this duty was the work of the owner. With a temperature of 106° to 108°, it was reasonable for the appellant to seek relief, as he did, and it was the duty of the vessel to provide relief. Therefore, when the oiler undertook the work of turning the ventilator, he was performing the owner's duty of making the ship seaworthy. And it was negligent to undertake the work of repairing this unseaworthy condition in the manner described, considering the danger of doing so with a long reach rod and exerting the pull with the ventilators fast, as the repairer found them.

Nor may we say that the appellant assumed the risk of his participation in this undertaking. He could not be said to have known and assumed the risk of creating this torsion in the rod and the spring which resulted. He did not assume the risk of a pipe slipping and striking him, as it did. He was obliged to work in the fire room of a vessel, unseaworthy as it was, because of defective ventilators, and in so doing he did not take the risk. Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391;

68 L. Ed. 748; Cricket S. S. Co. v. Parry, 263 F. 523 (C. C. A. 2).

With due consideration of the serious loss of sight, appellant's age, the handicap in his earning capacity, and permanent inconvenience due to the loss of sight of one eye and partial loss of sight of the second eye, an award of $20,000 will be allowed.

A decree will be entered below in conformity with this opinion.

Decree reversed.

L. HAND, Circuit Judge (dissenting).

This case presents a question of fact on which the judge has found for the respondent. He saw the libelant and his witness McCormack, and did not believe them when they said that the second engineer, Driscoll, gave any order to turn the ventilator by the added leverage of the pipe. Indeed, the supposed order was at most no more than a suggestion, even as the libelant states it. The judge also found that the chief engineer, Davenport, told the libelant not to touch the ventilator. Though he saw neither Driscoll nor Davenport, there is no reason à priori for accepting the libelant's story against theirs; rather the opposite, for certainly the libelant was under a much stronger motive to color the facts than they. What warrant we have for upsetting these findings I cannot understand; in a great many decisions we have refused to do so in similar situations.

Unless Driscoll did at least suggest the effort, the libelant assumed any risk in doing what he did. He knew that the ventilator had stuck, and if he did not know that he was setting up a strong torque in the rod, he should not have put the force of two men upon the handle without finding out whether it would stand such a strain and what might be the effect, if it would not. The conditions in the engine room were certainly severe, but without the supposed order, the case does not fall within those decisions which hold that a seaman on shipboard must obey orders. Indeed, I do not understand that my Brothers mean to hold otherwise. The ship was indeed unseaworthy, but the injury was in no sense the "proximate" result of that, and for such results alone was the owner liable. The Malcolm Baxter, Jr., 277 U. S. 323, 48 S. Ct. 516, 72 L. Ed. 901. Therefore, the ship was not liable at all; but if she was, I think that an award of $20,000 is much in excess of the proper amount.