**ROYAL INS. CO., Limited, et al. v. UNITED STATES et al.**

No. 187.

Circuit Court of Appeals, Second Circuit.

Feb. 1, 1937.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Prizer, of New York City, of counsel), for appellants.

Lamar Hardy, U. S. Atty., of New York City (William E. Collins, Sp. Asst. to U. S. Atty., of New York City, of counsel), for appellees.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The steamship Eastern Glade, owned by the United States, operated as a merchant vessel by the Mallory Transport Lines, Inc., as agent of the United States Shipping Board, was being operated on voyages to South and East African ports. Her No. 2 cargo hold was divided by a wooden bulkhead to increase her bunker space. The after part of that hold was used as a cross-bunker. On the voyage preceding the one in question she bunkered at Newport News, Virginia, and proceeded to New York where she loaded her outward cargo sailing for Africa in June, 1922. When she arrived at Durban, she still had on board 800 to 1,000 tons of coal in the forward part of No. 2 cross-bunker. She took on some coal when she arrived at Durban and on her return voyage again called at Durban and filled her bunkers, without shifting the old coal. On her return trip, before reaching New York, her master received a report from the chief engineer that the coal was heating. After she returned to New York with the old coal still in its original position against the wooden bulkhead, she proceeded to Galveston, where she put in 1,200 tons loaded into the lower hold on top of the old coal remaining against the wooden bulkhead. She then proceeded to Norfolk, where she took on a couple of hundred additional tons of coal, filling her entire bunker space.

On November 30, 1922, she sailed from New York to Cape Town, South Africa. On the morning of December 11th a fire broke out in the old coal adjacent to the wooden bulkhead; the crew being unable to con-

715

trol the fire, the course of the vessel was changed to the Cape Verde Islands, where she arrived on December 16th. She was eventually beached and Nos. 2 and 3 holds were flooded. Damage resulted to the cargo of the appellants' assignors.

The material and relevant facts are accepted by stipulation from the record in Arkell & Douglas, Inc., v. United States, 13 F.(2d) 555 (C.C.A.2), certiorari denied 273 U.S. 735, 47 S.Ct. 243, 71 L.Ed. 865. The defense interposed to this suit is that section 11 of the bill of lading was not complied with. It provided that "notice of loss, damage, or delay, must be given in writing to the vessel's agents within thirty (30) days after the removal of the goods from the custody of the vessel or in case of failure to make delivery within thirty (30) days after the goods should have been delivered, Provided, that notice of apparent loss or damage must be given before the goods are removed from the custody of the vessel, and proper notation made on the receipt given to the vessel for the goods shall constitute the notice herein required. Written claim for loss, damage or delay must be filed with the vessel's agent within six (6) months after giving such written notice. Unless notice is given and claim filed as above provided, neither the vessel, her owner, nor agent, shall be liable. No suit to recover for loss, damage, delay or failure to make delivery shall be maintained unless instituted within one year after giving a written notice as above provided."

Noncompliance with these provisions is admitted, but it is contended that there was a deviation in the voyage and that, because of it, the appellants may recover. No claim is made that the provisions of the bill of lading are invalid.

In Arkell & Douglas, Inc., v. United States, supra, we found the shipowner had been negligent in failing to shift the old bunker coal remaining from the previous voyage from the wooden bulkhead to a point near the stokehole door where it could be first used on the voyage during which the damage occurred of which the appellants complain. It is conceded that the fire was caused by spontaneous combustion of the old coal, and it is admitted that piling new coal upon the old will give rise to the danger of spontaneous combustion. There is evidence in this record that the failure to shift the coal was brought to the attention of the appellees' representa-

tives and that the shipowner was chargeable with negligence as well as knowledge and privity of the conditions. In the Arkell Case we held that sections 4282 and 4283 of the Revised Statutes (46 U.S.C.A. §§ 182, 183), relieving the owner of liability for loss due to fire and limiting the extent of its liability, could not be applied. Negligence and privity on the part of the shipowner were the only issues there presented and decided.

To invoke the doctrine of deviation, the appellants must establish more than negligence which renders the vessel unseaworthy. The Turret Crown, 297 F. 766 (C.C.A.2); W. R. Grace & Co. v. Panama R. Co., 12 F.(2d) 338 (C.C.A.2), certiorari denied 273 U.S. 715, 47 S.Ct. 108, 71 L.Ed. 855; The Caledonier, 31 F.(2d) 257 (C.C.A.2), certiorari denied Picard v. The Caledonier, 279 U.S. 865, 49 S.Ct. 480, 73 L.Ed. 1003; The Waalhaven, 36 F.(2d) 706 (C.C.A.2), certiorari denied The Waalhaven et al. v. Potash Importing Corp., 281 U.S. 747, 50 S.Ct. 352, 74 L.Ed. 1159. The argument of appellants is that the vessel was, by voluntary and deliberate action, sent upon her voyage in a known and dangerous condition and that this action was sufficient to abrogate the provisions of the bill of lading. It was sufficiently established that on the previous voyage the chief engineer of the Eastern Glade told the master of the condition of the old coal, that it was heating slightly, although it was not considered in a serious condition. The shifting of the old bunkers was advised and, as established in the Arkell Case, it was customary to do so. It was a reasonable precaution against the danger of spontaneous combustion, and it is established that officers of the appellees were informed of the presence of the old coal and that it should be shifted. There is a dispute as to whether they were told of the heating of the bunkers on the previous voyage. It is plain that the appellees were blameworthy and sent the vessel out in an unseaworthy condition which resulted in loss to the appellants' assignors.

In The Malcolm Baxter, Jr., 277 U.S. 323, 48 S.Ct. 516, 72 L.Ed. 901, the unseaworthiness of the vessel was not known, although it was found that due diligence was not exercised to ascertain her condition. The vessel had to put in for repairs, and in the interim an embargo became effective which made the journey impossible. It was found that the master hon-

estly, though negligently, thought he could complete the trip and it was held that there was not a voluntary deviation sufficient to displace the provisions of the bill of lading. A different situation existed in The Willdomino v. Citro Chemical Co., 272 U.S. 718, 47 S.Ct. 261, 71 L.Ed. 491, where willful failure to take on sufficient coal which made the completion of the voyage impossible was held to constitute a deliberate deviation.

The instant case may be said to lie between these two cases. Here the unseaworthiness was known, but we cannot say from the evidence that the completion of the journey successfully was known to be impossible. The rule of the Turret Crown, The Caledonier, and The Waalhaven, supra, is controlling here. In the Turret Crown, supra, the vessel was unseaworthy as to its steering apparatus, and the shipowners failed to comply with specific recommendations for its repair which had been made in a survey. The doctrine of deviation was held inapplicable. In The Caledonier and The Waalhaven, supra, the vessels broke ground with clearly insufficient bunkers which rendered the ships unseaworthy. We were unable to say that the voyages were undertaken with knowledge and intent of the consequences, and we held that deviation presupposes deliberateness and that, since merely a chance was taken, the departure from the routed voyage could not be treated as a deviation. In The Willdomino v. Citro Chemical Co., supra, the Supreme Court pointed out that "gross negligence" might be enough to support a deviation. But for all practical purposes, that amounts to the same thing as deliberate intention. See The Waalhaven, supra.

Undoubtedly the appellee's officers determined to take a chance and needlessly risked new perils in the voyage. Appellees would have been responsible for the loss had the appellants complied with the provisions of the bill of lading, but the evidence does not justify the imposition of liability through the doctrine of deviation. The case is unlike The Sarnia, 278 F. 459 (C.C.A.2), certiorari denied Sarnia S. S. Co. v. De Vasconcellos, 258 U.S. 625, 42 S. Ct. 382, 66 L.Ed. 797, and Olivier Straw Goods Corporation v. Osaka Shosen Kaisha, 47 F.(2d) 878, 74 A.L.R. 1378 (C. C.A.2), certiorari denied 283 U.S. 856, 51 S.Ct. 648, 75 L.Ed. 1462, where fundamental breaches of the contract of affreightment were held to displace the provisions of the bill of lading. The theory there is that the shipowner, having committed a breach which "goes to the essence of the contract," cannot defend upon the strength of that contract.

Decree affirmed.