## THE QUARRINGTON COURT.

**MENTE & CO., Inc., v. ISTHMIAN S. S. CO. et al.**

**Petition of COURT LINE, Ltd.**

**No. 357.**

Circuit Court of Appeals, Second Circuit.
July 30, 1941.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and John W. R. Zisgen, both of New York City, of counsel), for appellants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (L. de Grove Potter and James H. Herbert, both of New York City, of counsel), for Isthmian S. S. Co.

Haight, Griffin, Deming & Gardner, of New York City (John W. Griffin, Wharton Poor, and Charles S. Haight, Jr., all of New York City, of counsel), for Court Line, Ltd.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The appellants are owners and underwriters of cargo laden on the S. S. Quarrington Court at Calcutta for carriage to the United States. The vessel and her cargo were lost when she sank in the Red Sea. On the morning of December 7, 1937, when the vessel was about three weeks out of Calcutta, a small split was discovered in the main injection pipe. The split gradually increased until the pipe gave way about 8:30 A. M. The engineers then attempted to shut the main injection valve, but after a turn or two they could close it no further; "it was like metal sinking into metal." The water continued to pour in until the vessel was flooded. She was abandoned about 7 P. M. and sank about four hours later. The district court found that the vessel was

unseaworthy in respect to the pipe and the valve when she sailed from her port of loading, but that the defects were latent and due diligence had been exercised to make her seaworthy. Therefore, it was held that the carrier was not liable to cargo owners, whose rights were governed by the provisions of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. This conclusion is unassailable if the findings of fact can stand.

█ █ It is contended by the appellants that the evidence is insufficient to support the finding that the unseaworthiness which caused the vessel's loss was latent, or the finding of due diligence. The testimony on these issues was voluminous and we think no useful purpose would be served by a detailed recital of it. It is too well established to require citation of authorities that appellate courts do not set aside findings of fact unless convinced that they are clearly wrong. We are not so convinced; on the contrary we think the findings well supported. The main injection pipe was of proper design and material; it was only eight or nine years old, which is less than half the normal life of such pipes, and it had shown no previous signs of leaking. The customary practice with respect to inspecting such pipes is merely to watch for leakage, as was done by the engineers of the Quarrington Court. In the opinion of experts the cause of the pipe's failure was a latent defect in the brazing and dezincification produced by the action of sea water. No other reasonable explanation was offered. As to the valve, it had been opened for inspection in 1936 and a new lid and wings were installed. Under Lloyd's rules such valves need be opened for inspection only once in four years. The appellants make much of the rattling of the valve as evidence that it was defective long before the vessel reached Calcutta, but the district court's view that such rattle or chattering was not abnormal finds support in the testimony of the experts as to such valves in general, and of the vessel's engineers as to the valve in question. The contentions that the valve was damaged by a prior stranding at Yokohama was rightly rejected. The most probable cause of the valve's failure was the one accepted by the district court. We are not convinced that the finding that due diligence was exercised to make the vessel seaworthy was incorrect.

█ Isthmian Steamship Company filed cross assignments of error which challenge denial of its claim against Court Line, Ltd., for the profit it would have made had the voyage been completed. This relates to Isthmian's claim for lost freight on a quantity of manganese ore consigned to Carnegie Steel Corporation. The bill of lading recited that the shipment consisted of 7,526 tons "more or less" and provided: "Freight for the said goods to be paid at destination before delivery in cash without deduction as arranged, ship lost or not lost." A printed prepaid freight clause was scratched out, and a stamped provision added which read: "Freight payable at destination on outturn weight." After the vessel was known to be lost Isthmian billed Carnegie for the freight at the rate of $10 per ton and received payment of $75,260. Subsequently some question was raised by Carnegie, and the money was returned to it. Isthmian now seeks to recover this sum from the shipowner. Judge Coxe denied recovery stating in his opinion [36 F.Supp. 285]:

"The charterparty between Isthmian and the Owner incorporated by reference the U. S. Carriage of Goods by Sea Act, and this addition to the printed form was made in handwriting in the margin. I know of no good reason why this provision should not be given effect insofar as Isthmian's present claim is concerned; it meant that the obligation to Isthmian with respect to claims based on cargo shipments was the same as that owed to holders of bills of lading governed by the Carriage of Goods by Sea Act; and it still allowed some scope to the warranty of seaworthiness contained in the charterparty. The Westmoreland, 2 Cir., 86 F.2d 96. I hold, therefore, that the Owner is entitled to exemption from liability on Isthmian's claim for the reasons already given with respect to the claims of Cargo."

Isthmian contends that his conclusion is wrong and is not supported by The Westmoreland. Without deciding this question we are content to rest affirmance upon the proposition that Isthmian was under no legal liability to return the freight. In Globe & Rutgers Fire Ins. Co. v. United States, 2 Cir., 105 F.2d 160, 167, this court said that "even in the case of * * * a breach of warranty of seaworthiness the shipowner may rely upon the clauses of the contract to retain prepaid freight. The

Malcolm Baxter, Jr., 277 U.S. 323, 48 S.Ct. 516, 72 L.Ed. 901." See, also, Allanwilde Transport Corp. v. Vacuum Oil Co., 248 U.S. 377, 385, 39 S.Ct. 147, 63 L.Ed. 312, 3 A.L.R. 15; Portland Flouring Mills Co. v. British & F. M. Ins. Co., 9 Cir., 130 F. 860; Carver, Carriage by Sea, 8th Ed., § 578. The cases cited by Isthmian to support the view that it was bound to return the freight hold only that a special freight stipulation as here is ineffective if the loss was due to the carrier's negligence. See The Willdomino, 3 Cir., 300 F. 5, 21, affirmed 272 U.S. 718, 47 S.Ct. 261, 71 L. Ed. 491. As has been shown, no negligence was established. The provision that freight was payable on destination at outturn weight does not override the provision that it is to be paid regardless of the loss of the ship. If the ship were lost, the amount of freight would have to be ascertained by some other means than outturn weight. Pacific Steam Navigation Co. v. Thomson, 4 Ll.List Rep. 103. The weight stated in the bill of lading was the natural figure to take and no one has suggested that it was inaccurate. Since Isthmian was entitled to retain the freight any loss it has sustained resulted from its own voluntary action and not from any breach of warranty contained in the charter party.

Decree affirmed.