# THE MORMACMAR.

## No. 133–67.

### District Court, S. D. New York.

### Oct. 31, 1947.

Hill, Rivkins & Middleton, of New York City (Arthur O. Louis, of New York City, of counsel), for libellant.

John F. X. McGohey, U. S. Atty., of New York City (William H. Lane, of New York City, of counsel), for respondents.

MEDINA, District Judge.

While it is established that, of the 75 bales of gunnies delivered at Calcutta on December 19, 1942, to S. S. Mormacmar,

as common carrier, 41 bales were never delivered, in breach of the obligation to deliver the same, the first cause of action must nevertheless be dismissed because the action was not commenced within the time specified in the bill of lading.

Nor are the S. S. Mormacmar and respondents liable for the loss of said 41 bales of gunnies as for a deviation. The vessel arrived at Wellington, New Zealand, on January 30, 1943, having sustained damage due to heavy weather encountered on January 9th, 10th and 11th and also on January 25th and 26th, on which last date the damage was discovered. The vessel was seaworthy when she left Calcutta and was also seaworthy after the making of temporary repairs pursuant to the recommendations of the surveyor and after receipt of the report of the diver at Wellington. These temporary repairs were completed and on February 5th, 1943 the vessel proceeded on her voyage. New leaks in the after peak tank were discovered on February 6th and, because of the leaks and the lack of sufficient fresh water for the long trip to the Canal Zone, the vessel deviated from her course and returned to Wellington, where she arrived on February 7th.

The survey made on February 7th indicated damage not only to the after peak tank, but also to the stern frame, the rudder and propeller, the details of which it is unnecessary to enumerate. In order to place the vessel in the Floating Dock which was then available, it was necessary to remove part of the cargo including the shipment of gunnies referred to in the libel. Before the ship was reloaded the 41 bales of gunnies in question were destroyed and damaged by fire so as to be practically a total loss.

It will be found that prior to leaving Wellington on February 5th the vessel was seaworthy and that, in any event, the master and those responsible for the vessel had exercised due diligence to make her seaworthy. Under the circumstances, the deviation to a port of refuge by reason of the perils of the sea does not impose upon respondents the liability of insurers, as for a deviation. The second cause of action will accordingly be dismissed.

When the master and the representatives of the respondents, other than the Isthmian Steamship Company, caused part of the cargo to be taken ashore at Wellington in order that the vessel might proceed to the Floating Dock for repairs, it was the duty of the vessel and the respondents, other than the Isthmian Steamship Company, to place insurance to cover the risk of damage by fire. This they failed to do.

While the lack of cable communication at the time general average proceedings were set in motion on February 17th, before the fire, may explain the failure of the general average adjusters to follow the usual custom and practice of placing such insurance, as their information indicated the cargo consisted of ore and they had no other information to go by, there were at the time in Wellington representatives of the vessel and of the respondents, Moore-McCormack Lines, Inc. and War Shipping Administration. If these representatives lacked authority to place such insurance, this lack of authority was due to the failure of respondents to take the steps which they should have taken in the premises. Furthermore, the general average adjusters, prior to the fire, communicated with the War Shipping Administration and "pointed out to them that if there was commercial cargo involved it should be insured because it was being put ashore."

Clause 4 of the bill of lading was not intended to be applicable to such a situation as the evidence here discloses. Even if it were to be given such an interpretation, the clause could not govern the case since it would then conflict with § 1303, subdivision (2) of the Carriage of Goods by Sea Act, which provides that "The carrier shall properly and carefully load, handle, stow, carry, keep, care for and discharge the goods carried." 46 U.S.C.A. § 1303 (2).

The respondents, other than the Isthmian Steamship Company, were trustees of the goods thus placed ashore and their duty to keep and care for the goods necessarily included, under the circumstances, the duty to place insurance against the risk of fire, collapse of structures and rising of navigable waters.

Xavier N. Sardaro is named as Special Master to assess the damages; and a de-

522

cree will be entered in favor of libellant and against respondents, other than the Isthmian Steamship Company, on the third cause of action for the amount of such damages.

Submit findings.