**L. W. & P. ARMSTRONG, Inc. v. THE MORMACMAR et al.**

United States District Court
S. D. New York.

Oct. 30, 1950.

See also, D.C., 88 F.Supp. 736.

Hill, Rivkins & Middleton, New York City (Arthur O. Louis and Mark T. Walsh, New York City, of counsel), for libellant.

Irving H. Saypol, U. S. Atty., New York City (William H. Postner, New York City, of counsel), for respondent, United States.

Burlingham, Veeder, Clark & Hupper, New York City (Herbert M. Lord, New York City, of counsel), for respondent Moore-McCormack Lines, Inc.

MEDINA, District Judge.

This matter is before me on exceptions to the report of a Special Commissioner, appointed for the purpose of determining the damages suffered by libellant following a decision on the merits in libellant's favor rendered on October 31, 1947. In my earlier opinion, reported in The Mormacmar, D.C., 75 F.Supp. 520, I held that, because of the expiration of the contractual and statutory period of limitation upon such liability prior to the commencement of the action, the respondents were not liable for loss or damage to libellant's property. However, I found respondents liable for breach of a duty, implied from the custom in the trade, to insure libellant's property against the risks which resulted in its destruction. The question before me now is whether libellant suffered any damage as a result of respondents' breach of duty, and if so, the proper measure of the damages suffered.

At the trial of the issues on the merits it was not made clear that the insurance which libellant had procured on its own behalf covered the property at the time it was destroyed against the risk of destruction which destroyed it. It is true that there was some evidence before me that libellant had insured the goods, but the nature and the extent of the risk which was insured were not made clear.

Before the Special Commissioner, however, conclusive evidence was adduced showing that the goods were so insured by libellant. The question of law precipitated by these new proofs has been reserved by the Special Commissioner for determination by me. In light of the facts about to be stated relative to such insurance, I conclude that no damage was incurred by libellant as a result of respondents' breach of duty.

The following rider is attached to libellant's contract:

"In consideration of your acceptance of our Policy No. 572-G containing the following stipulation, viz: 'Warranted by the assured free from any liability for merchandise in the possession of any carrier or other bailee who may be liable for any loss or damage thereto, or who may have taken out insurance against such loss or damage; and free from any liability for merchandise shipped under a bill of lading containing the stipulation that the carrier may have the benefit of any insurance therein.'

"We agree that in the event of loss on goods described in said stipulation, for which the bailee or carrier denies liability, we will advance to you the amount thereof as a loan without interest, the repayment thereof to be conditional upon, and only to the extent of, any recovery from the carrier received by you and we further agree that we will pay and assume all costs and expenses of any suit brought in the name of yourself or of the owners of said goods, or otherwise to enforce the liability of the carrier or bailee."

Pursuant to the terms of this rider libellant's insurer delivered to libellant its draft for $3,840.33 and libellant delivered in return therefor, and pursuant to the terms of the rider, a loan receipt reading:

932

"Received From the Home Insurance Company, the sum of Three Hundred* Eight Hundred forty & 33/100 Dollars ($3,840.33) as a loan and repayable only to the extent of any net recovery we may make from any carrier, bailee or others, on account of loss to our property (described below) due to loss of or damage thereto on 'Mormacmar' on or about July/43, or from any insurance effected by any carrier, bailee or others on said property, and as security for such repayment thereby pledge to the said Home Insurance Company, the said recovery and deliver to it, duly endorsed, the bills of lading for said property and we agree to enter and prosecute suit against said carrier, bailee or others on said claim with all due diligence at the expense and under the exclusive direction and control of the said Home Insurance Company."

On the facts before me I have no alternative other than to find that this loan has become absolute payment. Repayment of the loan was to be made only to the extent of any recovery from "any carrier, bailee or others," "due to loss of or damage thereto on Mormacmar" on or about July, 1943, or "from any insurance effected by any carrier, bailee or others on said property."

It has already been decided that, due to the expiration of the period of limitation, the carrier is not liable *ex contractu* for the destruction of the merchandise. There is nothing to indicate any other theory of liability on the part of the carrier or any one else for the loss of the goods or for damage to the goods. Moreover, there is no insurance effected by any carrier, bailee or others on said property. Libellant's insurer has made payment in full to reimburse libellant and that ends the matter.

Libellant relies on the case of Luckenbach v. W. J. McCahan Sugar Co., 1918, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, however, as authority for the proposition that this Court cannot treat the moneys paid to libellant by its insurer as payment, but must respect the form of the agreement and treat it as a loan. In the Luckenbach case the liability of the libellant's insurer for loss of or damage to the goods was

conditional on the non-liability of the carrier for such loss or damage, as it was here. But there the carrier's liability had not as yet been determined. The loan there was a loan and nothing more: the insurer was not liable under its contract and could not be held to be liable until the carrier's liability was determined. Moreover, the parties to the insurance contract in that case were seeking to accomplish a commercially desirable result: to protect the insurer's right of subrogation against a benefit of insurance clause in the bill of lading whereby the carrier hoped to relieve itself of a primary liability for injuring the libellant's property by arrogating to itself the protection of the libellant's insurance; at the same time the loan receipt was designed to facilitate libellant's conduct of its business by promptly putting it into funds to cover its loss.

Here, in contrast, by virtue of my earlier decision the contract between libellant and its insurer is no longer conditional. Respondents have been held to be not liable for loss or damage to the cargo. This factor necessarily transforms the loan into a final, complete payment, for there will not be any recovery by libellant from which the loan would be repayable. Moreover, we are not concerned with benefit of insurance clauses or attempts to subvert the insurer's right of subrogation: the insurer remains subrogated to whatever rights libellant may have, and the only issue here is whether libellant has any right to damages. Compare Deming v. Merchants' Cotton-Press & Storage Co., 1891, 90 Tenn. 306, 17 S.W. 89 and Lancaster Mills v. Merchants' Cotton-Press Co., 1890, 89 Tenn. 1, 14 S.W. 317, where the same conclusion is reached on closely analogous facts.

The amount received by libellant from its insurer was computed at the same rate that the Special Commissioner found to be proper to compute the damages, i. e., at the rate of 23.03 cents per bag. Nothing presented to me persuades me that the Special Commissioner was in error when he adopted this rate. Indeed I am convinced he

* So in original.

was correct. The cost to libellant of obtaining the insurance, i. e., the small additional premium covering the additional risk, would perhaps be a proper item of damages, but the parties here agree that the amount is *dc minimis*.

It follows that no damages were suffered by libellant as a result of respondents' breach of duty. In view of this determination it will not be necessary to pass upon the contentions of respondent Moore-McCormack Lines, Inc. that it cannot be held liable in view of recent decisions delimiting the duties of general agents. Nor need the other questions presented be considered.

The fee of the Special Commissioner is fixed at $300.00.

A decree will be entered in accordance with this opinion.