**ISBRANDTSEN CO., Inc.,**
v.
**UNITED STATES.**

United States District Court
S. D. New York.
Feb. 11, 1953.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, Arthur O. Louis, New York City, of counsel, for plaintiff.

J. Edward Lumbard, U. S. Atty., New York City, William H. Postner, New York City, of counsel, for defendant.

CONGER, District Judge.

The above entitled case is one of 15 identical suits except for the name of the plaintiff, the type and extent of the cargo and the amount sued for. Plaintiff claims jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a) (2).

Identical motions are made in each case. My opinion in the above case will be dispositive of all the motions.

Defendant moves for an order dismissing the complaint under Rule 12(b) (1, 2) of the Federal Rules of Civil Procedure, 28 U.S.C., on the ground that this Court lacks jurisdiction over the subject matter of the action and over the person of the defendant in that defendant United States of America as sovereign has not waived its immunity from suit nor consented to be sued upon the cause of action purportedly set forth in the complaint and further defendant moves for summary judgment dismissing the complaint pursuant to Rule 56, Federal Rules of Civil Procedure.

In this connection defendant urges, among other things, (a) that the action is time barred, (b) res adjudicata and estoppel by judgment and (c) that there is no genuine issue of fact or law to be decided here.

Plaintiff moves for summary judgment in favor of plaintiff with a reference to compute damages.

The issue before me is rather simple. Plaintiff's attorneys very well state it in their reply memorandum as follows: "Simply stated these motions frame the issue: Is the Tucker Act with its six year limitation of time for suit (28 U.S. C. 1346[a] [2], 2401[a]) the sole basis for jurisdiction of this Court over the United States and of the subject matter of the complaints?"

On the argument before me, I believe it was conceded by both counsel that if I decide that the Tucker Act applies and that res adjudicata and estoppel by judgment does not apply, then plaintiff is entitled to summary judgment with a reference to fix damages.

The converse of the problem is: Do the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., together with the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., control here? If they do, then plaintiff has no cause of action.

A brief statement of facts (not contradicted) will be helpful.

Plaintiff was one of a number of shippers who, on or about December 21, 1942, delivered certain goods to defendant, the owner, operator, charterer, manager and the one in control of the S. S. Mormacmar, as a common carrier, for transport to the port of New York. On or about January 30, 1943, the S. S. Mormacmar put into the port of Wellington, New Zealand and sailed from there on February 5, 1943. On February 7, 1943, the vessel again put into said port of Wellington. Defendant asserts that the calls at Wellington were necessary as a port of refuge following alleged marine casualties. On or about February 9–11, 1943, certain

of the cargo of the S. S. Mormacmar, including part or all of plaintiff's shipment, was discharged and placed ashore in a warehouse at King's Wharf, Wellington, by defendant, necessitated, as claimed by defendant, to effect repairs to the vessel, caused by the marine casualties.

A part of the cargo being shipped by plaintiff was subsequently and on February 21, 1943, damaged or destroyed by a fire on the said King's Wharf. It is not denied by defendant that defendant did not insure the goods against loss by fire while they were in the warehouse.

The complaint in this action contains two causes of action. The first cause of action is for defendant's failure to perform its contract to insure the goods against the risk of fire, the cause of the loss, on the theory as claimed by plaintiff (Paragraph Sixth of the complaint) that defendant when it discharged the cargo on the wharf at Wellington as bailee of the said cargo and as a matter of invariable and established custom was under the contractual duty and obligation implied in fact and in law to arrange, place and procure for the protection of plaintiff insurance on said cargo as a special risk against the risk of fire and other hazards.

In this cause of action plaintiff sues not for the value of the goods but for damages for failure to insure.

In the second cause of action plaintiff sues for an alleged breach of contract on defendant's part in (1) not furnishing a seaworthy vessel, (2) in unlawfully deviating via ports not enroute from Calcutta to New York and (3) unlawfully deviating by placing plaintiff's goods in the warehouse at Wellington. In this cause of action plaintiff, as I read it, is suing for damage for the loss of the goods.

The general rule is that if these two causes of action come within the purview of the Suits in Admiralty Act then jurisdiction under any other act including the Tucker Act is absent. The Suits in Admiralty Act furnishes the exclusive remedy in admiralty against the United States on maritime causes of action arising out of the possession and operation of merchant vessels. Johnson v. U. S. Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451.

The question, therefore, poses itself as to whether these causes of action relate to a maritime transaction as defined in the above-cited case.

I am of the opinion that the second cause of action certainly does. It is a claim arising out of the navigation and operation of a merchant vessel of the United States. It charges loss by reason of unseaworthiness and deviation.

It seems to me to be purely a maritime claim.

The first cause of action is somewhat different. This is based upon an implied contract. Plaintiff says implied in fact, but it would seem to be more implied by law. See Baltimore & Ohio R. Co. v. United States, 261 U.S. 592 at page 597, 43 S.Ct. 425, 67 L.Ed. 816.

Here the damage occurred while the cargo was on land and the gravamen of the charge is the failure to procure insurance. It has generally been held that suit on a contract to procure insurance is not maritime. Virginia-Carolina Chemical Co. v. Chesapeake Lighterage & Towing Co., 2 Cir., 279 F. 684.

However, there is a difference here. If there was any contract it was implied, as I believe, by law, all incidental to the operation of the vessel.

Judge Medina, in The Mormacmar, D.C.S.D.N.Y., 75 F.Supp. 520, held that this implied agreement and duty to insure was based on the Carriage of Goods by Sea Act which provides that "The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C.A. § 1303(2). It would appear only logical that an action for damages for failure to carry out one of the provisions of the Carriage of Goods by Sea Act would be cognizable in admiralty. My decision, however, is based in the main on the fact that the Court accepted jurisdiction in The Mormacmar, supra.

In that case one Armstrong, Inc., one of the claimants in this series of actions brought suit against the United States and others for damage to a part of its shipment loaded at Calcutta during December, 1942 on the same voyage of the same vessel and damaged in the same fire. The libel contained three causes of action; the first for damage to cargo and the second for deviation. Both were dismissed after trial. There was no appeal from the decision as to the first cause of action but there was as to the second cause of action and the dismissal of this cause of action was affirmed on appeal. L. W. & P. Armstrong, Inc. v. The Mormacmar, 2 Cir., 196 F.2d 752.

The third cause of action in the original Armstrong libel asked for damage for failure to effect this special insurance while the cargo was in the warehouse on the wharf. Judge Medina held the United States and another liable on this cause of action and the matter was referred to a Commissioner to assess the damages. Exceptions were filed to the Commissioner's report and Judge Medina in a second opinion, D.C.S.D.N.Y., 93 F.Supp. 930, held that libellant had sustained no damage and dismissed the libel. This was affirmed on the appeal, 2 Cir., 196 F.2d 752.

The first and second cause of action here are in essence the same causes of action as the second and third causes of action in the original Armstrong libel based upon the same voyage, same vessel, damage by same fire, except of course in the first suit jurisdiction was claimed under the Suits in Admiralty Act. Here jurisdiction is claimed under the Tucker Act.

After the decision of Judge Medina in the Armstrong action all of these actions were started.

As I see it, the Armstrong case tried before Judge Medina and affirmed in the Court of Appeals clearly indicates that I should dismiss this complaint and hold that the Tucker Act does not apply here but that the Suits in Admiralty Act does. I come to this conclusion not on the theory of res adjudicata nor of estoppel by judgment (although I do find that res adjudicata does apply to the second Armstrong action).

I reason as follows: If the District Court and the Circuit Court of Appeals had jurisdiction of the Armstrong case under the Suits in Admiralty Act, then certainly, that jurisdiction being exclusive, there is no jurisdiction here in this suit under the Tucker Act. The attorneys for the plaintiff say, however, that the Court in the earlier case never did have jurisdiction under the Suits in Admiralty Act; that the question of jurisdiction never was raised and never called to the Court's attention.

True, the question of jurisdiction was never raised in either the District Court nor the Circuit Court of Appeals but in undertaking to dispose of the case on its merits it can fairly be assumed that these Courts felt they had jurisdiction.

The Supreme Court of the United States in Mansfield C. & L. M. R. Co. v. Swan, 111 U.S. 379 at page 382, 4 S.Ct. 510 at page 511, 28 L.Ed. 462, wrote as follows on this very subject: "On every writ of error or appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested * * *."

The Supreme Court of the United States in Chicago, B. & Q. R. Co. v. Willard, 220 U.S. 413, 419, 31 S.Ct. 460, 462, 55 L.Ed. 521, said that "It is firmly established by many decisions that in every case pending in an appellate Federal court of the United States, the inquiry must always be whether, under the Constitution and laws of the United States, that court or the court of original jurisdiction could take cognizance of the case."

I can only conclude that the Circuit Court of Appeals in the Armstrong case did make such inquiry and did satisfy itself that it had jurisdiction under this Suits in Admiralty Act.

In accord with the above the complaint is dismissed.

Settle order.