233 F.2d 184
 ISBRANDTSEN COMPANY, Inc., Michael Golodetz, Nathan Golodetz, Abraham G. Golodetz, Joachim Ginzberg, Simon Golodetz, Lazar Golodetz, Mark Ginzberg, Jura Ginzberg and Efim Golodetz, co-partners doing business under the firm name and style of M. Golodetz & Company, Anthony Gibbs & Co., Inc., Soledad Trading Corporation, L. W. & P. Armstrong, Inc., Mente & Co., Inc. and American Sugar Refining Company, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 117.
 Docket 23772.
 United States Court of Appeals Second Circuit.
 Argued January 19, 1956.
 Decided May 9, 1956.
 
 Arthur O. Louis, New York City (Hill, Rivkins, Middleton, Louis & Warburton, New York City, Joseph T. McGowan, New York City, of counsel), for plaintiffs-appellants.
 William H. Postner, Attorney, Department of Justice, New York City (Warren E. Burger, Asst. Atty. Gen., and Paul W. Williams, U. S. Atty., New York City, attorneys for defendant-appellee; Leavenworth Colby and E. Robert Seaver, Attorneys, Department of Justice, Washington, D. C., of counsel), for defendant-appellee.
 Before MEDINA, HINCKS and WATERMAN, Circuit Judges.
 HINCKS, Circuit Judge.
 
 
 1
 This is a consolidated appeal from orders in fifteen actions at law brought against the United States under the Tucker Act, each seeking to enforce liability based upon the same facts relating to the defendant's ownership and operation of S. S. Mormacmar. In each case below the complaint was dismissed for lack of jurisdiction under the Tucker Act upon an opinion, 123 F.Supp. 819, holding that, because the complaints were based upon subject-matter of a maritime nature, the United States was suable only in admiralty under the Suits in Admiralty Act, 46 U.S.C.A. § 742, which authorized such suits only when brought within two years of the accrual of the cause of action. The appeal is taken only from so much of the orders as dismissed the first cause of action stated in each complaint: no appeal has been taken from the dismissal of the second causes of action.
 
 
 2
 The basic facts upon which the asserted liability depends are recited in the opinion below. We will not repeat the recital. We refer also to the recital of facts contained in our earlier opinion in L. W. & P. Armstrong, Inc., v. The Mormacmar, 2 Cir., 196 F.2d 752. That was an appeal from an order in an admiralty suit brought by one of the appellants herein against the United States and others seeking to enforce liability for the same casualty which gave rise to the instant actions. The third cause of action dealt with in that opinion was substantially the same as the first cause of action in the complaints herein.
 
 
 3
 This first cause of action which the appellants claim was wrongly dismissed alleged in substance that the defendant "as bailee of the cargo, as a matter of invariable and established custom and practice, was under the contractual duty and obligation implied in fact and in law to * * * provide for the protection and benefit of plaintiffs * * * insurance on the said cargo as a special risk against the risks of fire * * * while discharged from the vessel and ashore" as a necessary incident to the drydocking and repair of the vessel in a port of refuge; and that it "failed to perform its said contractual obligation." The appellants insist that under these allegations the gravamen of their first cause of action is not for physical loss and damage to the cargo, which concededly would constitute subject-matter within the exclusive jurisdiction of the admiralty court under the rule of Johnson v. United States Shipping Board Emergency Fleet Corp., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, but for breach of a contract to effect insurance. Such a contract, they contend, is non-maritime in nature and hence not within the jurisdiction of admiralty.
 
 
 4
 We think our decision in L. W. & P. Armstrong, Inc., v. The Mormacmar, supra, leaves no room for that contention. In that case it was held below by Judge Medina, then sitting as a district judge, The Mormacmar, D.C., 75 F.Supp. 520, that the carrier's duty to insure was one imposed by the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(2). Judge Medina then disposed of the case on the merits. On appeal, this court affirmed on the merits. Both below and on appeal there was no discussion of the maritime nature of the obligation which had been breached and no express finding that it was indeed maritime. But we think that in the case here Judge Conger was right in concluding that the exercise of jurisdiction in admiralty in the Armstrong case imported such a finding. If, as to that, there be any doubt, we now expressly hold that in the circumstances of this case the carrier's obligation to insure was a maritime obligation the breach of which by the United States created subject-matter for suit within the exclusive jurisdiction created by the Suits in Admiralty Act. For we agree with the conclusion expressly stated, first by Judge Medina below and then by Judge L. Hand in his concurring opinion in the Armstrong case, that the obligation was imposed as an inseparable incident to the contract of carriage by the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1302(2). Being an obligation thus attaching to the maritime contract of carriage there is no room for implication that the obligation arose from a non-maritime contract voluntarily entered into. It was held in Archawski v. Hanioti, 76 S.Ct. 617, 620; — a case involving a libel to recover passage fare paid and wrongfully retained, that the subject-matter was maritime because it was "plain in the context that the obligation to pay the moneys arose because of a breach of the contract to transport passengers", and further, that "The truth is that in a case such as the present one there is neither an actual promise to repay the passage moneys nor a second contract." In the case before us the obligation to insure, in its factual context, was an integral part of a maritime contract of carriage and there was no actual promise to insure and no collateral, second, contract to insure.
 
 
 5
 The case of Virginia-Carolina Chemical Co. v. Chesapeake Lighterage & Towing Co., 2 Cir., 279 F. 684, on which appellants rely, is not apposite to the situation here. For under the facts of that case the carrier was under no statutory obligation to insure against the risk which matured into the loss. Indeed, that case and many others cited by appellants antedated the Carriage of Goods by Sea Act. Likewise, as to Cory Bros. & Co., Limited v. United States, 2 Cir., 51 F.2d 1010. Minturn v. Maynard, 17 How. 477, 15 L.Ed. 235, is far afield.
 
 
 6
 The appellants cite United States v. Atlantic Mutual Insurance Co., 298 U.S. 483, 56 S.Ct. 889, 80 L.Ed. 1296, for the proposition that a general average contribution is enforceable against the United States in an action at law. As we said in Prudential Steamship Corp. v. United States, 2 Cir., 220 F.2d 655, we think that holding was limited to cargo carried on a public vessel as distinguished from one "employed as a merchant vessel." We adhere to our holding there expressed that under Johnson v. United States Shipping Board Emergency Fleet Corp., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, exclusive jurisdiction over general average suits against the United States is conferred on the district courts by the Suits in Admiralty Act. But even if in this we are mistaken, we should still hold that in the situation here the appellee's duty as to port-of-refuge insurance, bottomed as it is on the Carriage of Goods by Sea Act, is subject-matter cognizable in admiralty.
 
 
 7
 Affirmed.