### ROSENTHAL et al. v. THE LOUISIANA.

*(Circuit Court, E. D. Louisiana. January 11, 1889.)*

1. SHIPPING—CARRIAGE OF GOODS—PLEADING—AMENDMENT.

To a libel for the value of goods shipped on claimants' vessel under a contract of affreightment, claimants answered, admitting the contract and delivery of the goods to the master of the wharf at the place of shipment, but alleged that the goods were accidentally destroyed by fire while on the pier, and before they were actually laden on board, and that the bill of lading exempted them from loss by fire at sea or in port. Libelant filed an amended libel, alleging that claimants agreed to insure the goods for the amount claimed, from the time they came into their possession until laden on board; and, having failed to make the insurance, they were liable. *Held,* that the amendment was not inconsistent with the original libel.

2. ADMIRALTY—JURISDICTION—CONTRACTS.

The contract of affreightment, the basis of the ship's liability, being a maritime contract, the additional stipulation for insurance while the goods were on the wharf cannot oust the jurisdiction of the admiralty.

In Admiralty. On appeal from district court.

Libel by Rosenthal Bros. against the steam-ship Louisiana for breach of contract of affreightment. Decree for libelants, and claimants appeal.

*Bagne & Denegre,* for appellants.

*Hornor & Lee,* for appellees.

PARDEE, J. The commercial firm of Rosenthal Bros., of the city of New Orleans, brought a libel in the district court for non-delivery of certain 12 cases of shirts, valued in New York at $1,106.42, shipped on board the Louisiana, to be delivered to libelants at New Orleans, they paying freight. The claimants answer, admitting the affreightment contract, the delivery of the goods to the master on the wharf at the port of New York, the issuance of the bill of lading; but then allege that, after the goods were delivered to the master, and while on the pier, a fire accidentally broke out on the said pier, and that therefrom said goods were destroyed by fire before they were ever actually shipped or laden on board; and they further allege that the bill of lading granted and issued in the case, and made the basis of the libelants' suit, con-

tained, among other provisions, an express provision that the said steamship Louisiana and owners "should not be liable for any loss, damage, or injury to said goods, which should be caused by the acts of God, fire at sea or in port," etc.; and they claim, by virtue of such exemption, that although the goods were destroyed by fire after delivery to the ship, yet neither the ship nor owners are liable. Thereupon libelants filed an amendment to their original libel, averring "that if their said goods were destroyed by fire while on the pier of the claimants in the city of New York, as alleged in the answer, that still the said claimants are liable for the value of said goods; because said merchandise was sent to said port for shipment to New Orleans, under assurance and statements made by the agents of said steam-ship Louisiana and of said respondents, both at the port of New Orleans, where the said libelants reside, and at the port of New York, where the respondents reside, that the same was covered and protected by said steam-ship owners by insurance effected by them against loss or damage by fire by lying on said pier awaiting shipment." Thereupon the claimants filed an exception to the said amended libel on the ground that it was at variance and inconsistent with the original libel filed, and on the further ground that the contract alleged in said amendment was not a maritime contract, and that, with regard to said contract, the court was without jurisdiction. The district judge, in giving judgment for the libelants, gave the following reasons in such judgment, that "there was a contract by which respondents agreed to insure the goods for the value of which this suit was brought, from the time they came into their possession up to the time they were laden on board; and that, having failed to make such insurance, they are liable for the value of the goods at the port of New York."

The case made by the pleadings and evidence is a contract of affreightment with an ancillary provision that while the ship was not to be liable for fire on board, either at sea or in port, yet she was to protect the goods from fire while on the wharf awaiting lading. It is difficult to see any inconsistency in the provisions of this contract. The ship was certainly liable as carrier from the acceptance by it of the goods on the wharf. See Macl. Shipp. 413; Abb. Shipp. 345. By the terms of the bill of lading in this case (and it is a common one in such bills) the ship was not to be liable for damages from fire at sea or in port; yet while the goods were in the custody of the carrier, although not yet loaded, the carrier was responsible for loss or damage arising from negligence, if not responsible for loss arising from accident. The exemption from liability from fire at sea or in port, contained in the bill of lading, might well be considered to apply only when the goods were loaded on board; and the parties could well agree, as they appear to have done, that the goods should be protected while on the wharf, and in danger from outside negligence; and particularly when, as appears in this case, such provisions seem to be necessary to obtain freight for the ship. See *Walker v. Transportation Co.*, 3 Wall. 150.

As to jurisdiction, there seems to be no doubt. As the main contract (and the basis of the ship's liability) is a maritime contract, the addi-

tional stipulation as to insurance while the goods lay on the wharf cannot oust the jurisdiction. I agree with the district judge, that on the case made judgment should go for libelants.