### NORTH AMERICAN SMELTING CO. v. MOLLER S. S. CO., Inc.

#### No. 175 of 1950.

United States District Court
E. D. Pennsylvania.

March 20, 1952.

See also 95 F.Supp. 71.

4. Id., 91 F.2d at page 1004.

8. 2 Cir., 151 F.2d 132.

9. Id., 151 F.2d at page 137.

448

James S. Benn, Jr., Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., for respondent.

CLARY, District Judge.

This is an action in admiralty to recover damages for loss of cargo in a shipment originating in the Philippine Islands and consigned to libellant at Philadelphia, Pennsylvania. By agreement of the parties the issue of liability was tried first. From the pleadings and proof in this case I make the following

### Findings of Fact

1. Libellant is a Pennsylvania corporation with principal office and place of business in Wilmington, Delaware.

2. Respondent is a corporation with principal office and place of business in the United States of America at 30 Broad Street, New York, N. Y., owning and operating a number of vessels engaged in the common carriage of cargo on the high seas, and the owner of the motor ship Johannes Maersk, which is a general ship engaged in the transportation of merchandise for hire as a common carrier between, among others, the ports of Manila, Philippine Islands, and Philadelphia, Pennsylvania, U. S.A.

3. On or about January 22, 1948, Sy Hap Seng delivered to respondent at said port of Manila a shipment consisting of:

58 full drums of heavy yellow brass scrap,

45 half drums of heavy scrap soft lead,

54 full drums of heavy copper and wire scrap,

21 bundles of heavy copper and wire scrap,

9 rolls of heavy copper and wire scrap, to be transported from said port of Manila to said port of Philadelphia, there to be delivered to the order of libellant in consideration of an agreed freight, which was prepaid, and in accordance with the terms of a certain bill of lading then and there signed and delivered to said shipper by the duly authorized agent and representative of respondent and of said motor ship Johannes Maersk.

4. Thereafter respondent loaded said shipment on board said motor ship Johannes Maersk and said vessel, having the same on board, sailed from said port of Manila and on or about March 27, 1948, arrived at said port of Philadelphia.

5. On Monday, March 29, 1948, the Traffic Manager of respondent's Philadelphia Agent mailed a notice to libellant apprising libellant of the arrival of the aforesaid shipment.

6. On March 29, 1948, pursuant to authorization of the Collector of Customs of the Port of Philadelphia to discharge the cargo from the vessel immediately upon arrival, the motor ship Johannes Maersk commenced discharging cargo at Pier 98 South where the Steamship's Agent for said Johannes Maersk, B. H. Sobelman & Co., Inc.,

had made arrangements with Philadelphia Piers, Inc., to berth the vessel.

7. Under the arrangements with Philadelphia Piers, Inc., the motor ship Johannes Maersk had the right to discharge cargo from the vessel to the pier within the confines of the length of the vessel plus 50 feet or the width of the pier.

8. By custom prevailing in the Port of Philadelphia during March and April of 1948 and by the standard practice of Philadelphia Piers, Inc., operators of Pier 98 South, consignees of cargo were allowed a period of "free time" of 5 days' duration, exclusive of Saturdays, Sundays and Holidays, following complete discharge of cargo for the removal of such cargo from the discharge pier without incurring an additional charge in respect thereto.

9. Libellant's shipment of scrap metal was unloaded onto the Pier sometime during the day of March 29, 1948, and under the direction of a Checker employed by respondent's Agent, B. H. Sobelman & Co., Inc., it was sorted and placed in adjoining bays inside the covered portion of the Pier and on the first floor of the Pier and was found by the Checker to be intact on that day.

10. Sometime after March 29, 1948 and before April 2, 1948, libellant's Customs Broker presented the original Bill-of-lading to respondent's Agent and obtained a form of Freight Release entitling libellant to take actual delivery of the aforesaid shipment.

11. On April 2, 1948 representatives of libellant came to Pier 98 South and after presenting the Freight Release to a Delivery Clerk employed by respondent's Agent, loaded on trucks and carried away

     40 drums scrap brass
     36   "   copper
     27 half drums lead

which removal was terminated by the end of the working day at approximately 5 o'clock in the afternoon.

12. In order to complete removal on that day, libellant would have been compelled to have his representatives work beyond the normal working day and would have been compelled to pay premium wages and overtime to respondent's Delivery Clerk and Checker.

13. About 5 o'clock p. m. in the afternoon of April 2, 1948, the Checker of respondent's Philadelphia Agent tallied the remaining drums and found the remaining shipment intact.

14. At the beginning of the next regular business day, Monday, April 5, 1948, respondent's Checker again tallied the amount remaining on the pier and found the following items to be missing:

     1 drum scrap brass
     1   "    "   copper
     6 bdls. scrap copper
     3 rolls scrap copper wire

15. On the same date, April 5, 1948, and within the "free time" previously referred to, libellant's representatives returned to Pier 98 South and removed the balance of the shipment.

16. Under the standard agreement between Philadelphia Piers, Inc., and carriers only cargo transferred to the second or third floor of said Pier 98 was placed in storage with said Philadelphia Piers, Inc.

17. No part of the shipment in question in this case was transferred to the second or third floors of said Pier 98 and no part of said shipment came into the custody and control of said Philadelphia Piers, Inc.

18. Philadelphia Piers, Inc., furnished watchman service only for cargo released to it on a storage receipt and placed on the second or third floor of said Pier 98 and maintained no watchman service over cargo placed on the first or ground floor of said Pier 98.

19. Philadelphia Piers, Inc., furnished fire watchman service, only, on the first floor in accordance with its agreement with its lessor, The Federal Maritime Board.

20. That portion of the said total shipment described in Finding 14 above has never been delivered to libellant by the respondent at the Port of Philadelphia or elsewhere.

21. Neither the respondent nor its Agent maintained or made arrangements for any guard over the cargo on Pier 98 during

the period from April 2nd to April 5th, 1948.

22. No guard was maintained on the water side of the Pier. Land access to Pier 98 was through entrances manned by employees of Philadelphia Piers, Inc. Said employees checked incoming and outgoing trucks for passes issued by steamship companies, but had no right of search of contents of said trucks.

23. Respondent failed to exercise reasonable care for the protection of libellant's cargo while said cargo was in the care, custody and control of the respondent from April 2, to April 5, 1948.

24. The loss of the items set forth in Finding 14 above was due to the carelessness and negligence of the respondent in failing to maintain a reasonable watch over said items before delivery to libellant.

### Discussion

In this action respondent has raised three defenses. The first defense challenges admiralty jurisdiction. The position taken by the respondent is that once it is established that the goods are actually off the ship's tackle, admiralty jurisdiction ceases. The second contention is that under Paragraph 7 of the conditions of the Bill-of-lading referred to in Finding 3, it was expressly understood that the articles named therein should be at the risk of the goods' owner, shipper, or consignee thereof as soon as delivered from the tackle of said motor ship at her port of discharge and they should be received package by package as so delivered and if not taken away the same day they might (at the option of the vessel's agent) be sent to store or warehouse or permitted to lie where landed at the expense and risk of the goods. This the respondent contends is a condition permitted under the Carriage of Goods by Sea Act and completely exonerates the respondent of any liability. The final contention is that under the decision of the Court of Appeals for the Third Circuit in The Monte Iciar, 167 F.2d 334, libellant has not maintained its burden of proof.

As to the first contention that this case is not within admiralty jurisdiction, respondent has cited several cases which it alleges supports its contention. One of these is The Ciano, D.C., 63 F.Supp. 892. There a consignee-owner of certain goods sued a foreign steamship company and the Reading Company for damages to goods in transit during rail shipment between Philadelphia and Minneapolis, Minnesota. The damage clearly occurred during rail shipment. Service was never made on the ocean carrier and no appearance was entered on its behalf. The Reading Company filed exceptions to the libel based on jurisdiction. These exceptions were sustained and the libel dismissed as to the Reading Company. The Court there held that the contract involved with the Reading Company was wholly terrene and that the Court had no jurisdiction in admiralty over the action as to the Reading Company.

The case of Armstrong Cork Co. v. Farrell Line, Inc., D.C., 81 F.Supp. 848, would seem to support respondent's contention of lack of jurisdiction in admiralty. I do not understand, however, that case to hold as contended for by the respondent that once goods are landed from a ship to a pier, all admiralty jurisdiction ceases. Respondent argues that the only obligation thereafter imposed upon the carrier is the same obligation that might be undertaken by any railroad, trucking company, or warehouse man to maintain and protect the goods from harm for a reasonable length of time until they could be taken away by the libellant, which duties are distinctly not maritime in nature. This entirely overlooks and disregards the fundamental obligation of the carrier to deliver the goods to the consignee. Cf. The Eddy, 5 Wall. 481, 72 U.S. 481–495, 18 L.Ed. 486. It is only by virtue of the provisions of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., that the carrier by appropriate provision inserted in a bill-of-lading is able to relieve itself from the absolute obligations of a carrier. This right granted by statute is subject to the provisions of the Harter Act, 46 U.S.C.A. § 190 et seq., which provides that the carrier may not relieve itself from liability for negligence. The Monte Iciar, supra.

The important question to be determined in this case is "Was the respondent

negligent?" Because of the provisions contained in the bill-of-lading, the burden is on the libellant to establish that negligence. The Monte Iciar, supra. Mere failure to deliver the goods imposes no liability on the respondent. The respondent carried its burden in showing that the goods were actually landed on the pier. Thereafter it was the obligation of the libellant to demonstrate that the disappearance of the goods was occasioned by negligence on the part of the respondent. This burden was fully recognized by the libellant who introduced testimony to show that no guards were maintained over the cargo here involved on Pier 98 during the period from April 2nd to April 5th, 1948. While the evidence disclosed that the land access to the pier was through entrances manned by employees of the pier-owner, these employees checked incoming and outgoing trucks only to determine that the drivers thereof had passes issued by one of the steamship companies then using the pier facilities. There was no right of search of the contents of the truck and the operator of the pier undertook no such service. It was further demonstrated that no guards of any sort were maintained on the water side of the pier. Respondent relied merely upon the presence of watchmen who were in effect merely fire-watchers supplied by the operator of the pier to guard against fire hazards in accordance with its contract from its lessor, The Federal Maritime Board, an Agency of the United States Government.

Respondent's testimony was that it only provided guards for the protection of certain types of cargo, for example, cargo consisting of small packaged goods easily hidden on the person. It contended that in view of the heavy nature of the cargo involved in this case and the manning of the land accesses to the pier by the employees of the pier operator, it employed reasonable safeguards for the protection of this cargo. With this contention, I do not agree. The precautions taken to safeguard the cargo were not reasonable under the circumstances and constituted negligence on the part of the respondent. Pier 98 was used by various shipping companies and the opportunities for improper removal of cargo, even of the type here involved, are too obvious to require discussion. The respondent, therefore, was negligent and the attempt under the provisions of Paragraph 7 of the conditions of the Bill-of-lading to exculpate itself of liability fails because of that negligence under the provisions of the Harter Act, 46 U.S.C.A. § 190. Libellant, therefore, is entitled to judgment in its favor.

Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this proceeding.

2. Respondent was a common carrier by water for hire of libellant's shipment involved in this action.

3. As such common carrier by water for hire, respondent contracted to transport libellant's shipment from Manila, Philippine Islands, to Philadelphia, Pennsylvania, and there deliver the same to the libellant.

4. That portion of libellant's shipment consisting of

1 drum scrap brass
1  "   "   copper
6 bdls. scrap copper
3 rolls scrap copper wire

was never delivered to the libellant by respondent.

5. The failure of respondent to deliver the aforesaid portion of libellant's shipment was due to the negligence of the respondent in respect to the care and custody thereof.

6. Section 1 of the Harter Act, 46 U.S.C.A. § 190, is applicable and the respondent is liable for negligence in the case of the libellant's cargo while on the pier despite the provisions of Paragraph 7 of the bill-of-lading.

7. Respondent is liable to libellant in damages in an amount equal to the value of that portion of said shipment not delivered to libellant.

8. Libellant is entitled to entry of judgment in its favor.

An appropriate order for judgment will be submitted. If the parties cannot agree upon damages, a further hearing will be held to determine the amount.