**LUCKENBACH STEAMSHIP COMPANY, Inc., Cross-Libelant,**

v.

**COAST MANUFACTURING & SUPPLY COMPANY, Cross-Respondent.**

**No. Ad. 20750.**

United States District Court
E. D. New York.

May 13, 1960.

On Reargument July 29, 1960.

Burlingham, Hupper & Kennedy, New York City, for cross-libelant, Harold M. Kennedy, Norman M. Barron, Hervey C. Allen, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, pro hac vice for cross-respondent, Coast Mfg. & Supply Co., appearing specially, James M. Estabrook, New York City, Advocate.

Bigham, Englar, Jones & Houston, New York City, *amicus curiae*, Henry N. Longley, New York City, Advocate.

BARTELS, District Judge.

Motion by cross-respondent to dismiss the cross-libel on the grounds that in admiralty the Court lacks jurisdiction *in personam* over cross-respondent, and that it lacks jurisdiction over the subject-matter of the original libel and of the cross-libel, and hence the cross-libel must be dismissed.

On December 3, 1956, a fire occurred at the Brooklyn pier of cross-libelant Luckenbach Steamship Company, Inc. (hereinafter referred to as "Luckenbach") which was followed by an explosion destroying the pier and the goods stored thereon and causing serious loss of life, personal injuries and other property damage. As a result numerous suits have been commenced against Luckenbach to recover damages of approximately $50,000,000. Luckenbach claims that the explosion was caused by a shipment of safety fuses consigned to and insured by cross-respondent Coast Manufacturing & Supply Company (hereinafter referred to as "Coast") which was upon the pier at the time the fire started, without full disclosure by Coast to Luckenbach of its explosive nature.

The original libel in this case is based upon loss of a shipment of "1950 cartons of Cordeau Detonant Fuse (Safety Fuse)" delivered to Luckenbach at its Brooklyn pier on November 28, 1956, for transportation to California where it was to be delivered to Coast, the consignee. A dock receipt was issued for the shipment incorporating the terms of the bill of lading required to be issued by Luckenbach under that receipt. The bill of lading contains the usual clauses of carriage and specifically provides in paragraph 6 thereof that the goods covered by the bill of lading "while on the wharf or in warehouse awaiting shipment, transshipment or delivery shall be at owner's risk of loss or damage by fire, flood, earthquake, or other casualties, * * * not happening through the fault or negligence of the carrier."

On April 18, 1958, a libel (Docket No. Ad. 20672) was filed in this Court by Bigham, Englar, Jones & Houston (hereinafter referred to as "Bigham, Englar") as proctors for Coast and other libelants to recover for loss of their respective shipments of cargo, aggregating approximately $4,000,000, and including the claim of Coast for the loss of the above shipment.

On March 6, 1959, Luckenbach filed a cross-libel to secure indemnity against Coast for $50,000,000, by making service on Bigham, Englar based upon clause 14 of the bill of lading [1] and an obligation

---

[1] "14. The shipper, consignee, or owner shall be liable for all loss, expense, damage or delay to ship or cargo caused by inflammable, explosive, noxious or dangerous goods shipped without full disclosure in writing of the nature of said

implied under general maritime law. The $50,000,000 demanded is comprised of: (i) $37,000,000 representing damages covered in numerous suits now pending in this Court against the cross-libelant for loss of life and personal injuries, (ii) $5,000,000 representing damages covered in numerous suits now pending in this Court against the cross-libelant for loss or damage to cargo and other property, and (iii) $6,000,000 representing damages covered in numerous suits now pending in the courts of the State of New York against the cross-libelant for loss or damage to cargo and other property as well as for personal injuries. An examination of the cross-libel reveals that the damages claimed are far above those permitted by clause 14 of the bill of lading.[2]

▬ The cross-libel herein was filed under a new docket number (Ad. 20750) rather than the docket number assigned to the original suit. This was required by the Clerk of this Court pursuant to standard practice. Coast makes a point of this difference upon the theory that the cross-libel is, in effect, not a cross-libel but a new suit, requiring personal service on Coast and thus one over which this Court has no jurisdiction. The Court believes this contention is without merit.

Coast is a Delaware corporation with its principal office and place of business in California and is apparently not subject to suit in New York. Luckenbach is also a Delaware corporation. On January 15, 1957 and December 15, 1957, Coast received payment for its loss from Fireman's Fund Insurance Company (hereinafter referred to as "Fireman's Fund") under two loan receipts which empowered Fireman's Fund to press its claim against Luckenbach in Coast's name.[3] Fireman's Fund is also the underwriter for cross-libelant Luckenbach and acting in defense of Luckenbach in connection with many suits now pending against it. Bigham, Englar, after receiving service of the cross-libel, declined to represent Coast in defense thereof upon the ground, according to Coast, of a conflict of interest and upon the additional ground, according to Luckenbach, that insurance *on* the cargo would not include coverage of liability to third persons for damage caused *by* the cargo.

When Coast learned of the cross-libel it demanded that Fireman's Fund drop the New York action, which it refused to do. Coast, appearing specially herein through other attorneys, now moves to set aside the service of the cross-libel or, if service is sustained, to dismiss that libel for lack of jurisdiction. In its brief it also claims that the Admiralty Court lacks jurisdiction of the original libel.

I

### Propriety of Service

▬ Coast appears specially by other attorneys and contests the propriety of service of the cross-libel upon the

---

goods before delivering the same to carrier, whether shipper be principal or agent, and whether or not he had notice of their nature. Carrier may destroy such goods or throw them overboard at any time without liability therefor. Extra charges, if any, on such goods must be paid by the shipper, consignee or owner. Attention of shipper is called to Sec. 235 of the Penal Laws of the United States (Act of Congress, March 4, 1909), regulating the presentation to a common carrier of explosive or dangerous articles."

2. Limited to cargo damages only inasmuch as no vessel was at the dock.

3. " * * * and we hereby appoint the agents and officers of the said Insurance Company * * * our agents and attorneys in fact, with irrevocable power to collect any such claim and to begin, prosecute, compromise or withdraw, in our name, but at the expense of the said Insurance Company, any and all legal proceedings which they may deem necessary to enforce such claim or claims, and to execute in our name any documents which may be necessary to carry into effect the purpose of this agreement.

"We hereby ratify, approve and confirm the filing and maintenance of any suits, heretofore or hereafter commenced, against the carrier or vessel operator or agents in the name of the consignor, or in our name or any other name for recovery of any damages with respect to said shipments. * * * *"

ground that service thereof on Bigham, Englar did not subject the respondent to the *in personam* jurisdiction of this Court. The basis for this assertion is that Bigham, Englar represents Fireman's Fund which was the underwriter of both Coast and Luckenbach and that Fireman's Fund was the real party in interest and that this conflicting interest was unknown to Coast at the time the libel was served. It is now well settled that under a loan receipt transaction the insured is the real party in interest and that under such circumstances Coast was the proper party to bring the suit.[4] In fact, in Hartford Fire Insurance Company v. Commercial Union Assurance Co., Ltd., D.C.S.D.N.Y.1955, 131 F.Supp. 751, the underwriter was held to be an improper party to maintain an action under a loan receipt transaction. The Court finds it has jurisdiction over Coast as a libelant and, under Rule 16 of Admiralty Rules of this Court, service of the cross-libel was properly made on Bigham, Englar as its proctors.[5] If the libel has been filed without authority or jurisdiction been obtained by reason of fraud or failure to disclose an adverse interest as suggested by Coast, the remedy under the present facts is not a motion to set aside the service but a separate proceeding to invalidate the representation [6] and to enjoin this proceeding in the interim. The first branch of Coast's motion must accordingly be denied.

## II

### Jurisdiction Over Original Libel

The controversy involved the alleged liability of Luckenbach in contract for failure to deliver a shipment to Coast and, in turn, the alleged liability of Coast in contract for damages to the vessel's entire cargo arising from failure to notify Luckenbach of the explosive nature of the shipment, joined with the alleged indemnity liability of Coast in tort for damages to person and property including property other than the cargo. Coast claims that the cross-libel of Luckenbach against Coast should be dismissed for lack of jurisdiction over the subject matter and that its exceptions to the cross-libel should be sustained. In its brief Coast also claims that its original libel against Luckenbach should be dismissed. This presents a troublesome question difficult of resolution. Whether or not this Court has jurisdiction over the subject matter of the original libel depends upon the nature of the contract. If the contract relates to the use of a ship or to commerce on navigable waters, it is a maritime contract and is clearly within the admiralty jurisdiction of this Court.[7] A contract for ocean transportation of

4. See, Luckenbach v. W. J. McCahan Sugar Refining Co., 1918, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170; The Plow City, 3 Cir., 1941, 122 F.2d 816, certiorari denied Plow City S.S. Co. v. Texas Gulf Sulphur Co., 315 U.S. 798, 62 S.Ct. 579, 86 L.Ed. 1199; Dixey v. Federal Compress & Warehouse Co., 8 Cir., 1942, 132 F.2d 275; Augusta Broadcasting Co. v. United States, 5 Cir., 1948, 170 F.2d 199. In refusing to recognize a loan receipt as an assignment creating the underwriter the real party in interest, the authorities continue to adhere to a well established fiction.

5. The Eliza Lines, C.C.Mass.1894, 61 F. 308, 322–324; The E. S. Howard, D.C. S.D.N.Y.1943, 52 F.Supp. 600; See British Transport Commission v. United States, 1957, 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed.2d 1234. Czaplicki v. Hoegh Silvercloud, 1956, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387, cited by Coast, does not support its position because there the insured had a claim over and above the underwriter's claim which the underwriter was apparently not prosecuting. Such is not the case here.

6. To invalidate the present authority *nunc pro tunc*, certainly Fireman's Fund and perhaps Bigham, Englar appear to be necessary parties.

7. Archawski v. Hanioti, 1956, 350 U.S. 532, 535, 76 S.Ct. 617, 100 L.Ed. 676; New Jersey Steam Navigation Co. v. Merchants Bank, 1848, 6 How. 344, 47 U.S. 344, 12 L.Ed. 465; Morewood v. Enequist, 1860, 23 How. 491, 64 U.S. 491, 16 L.Ed. 516; Martran Steamship Company, Inc. v. Aegean Tankers Limited, D.C.S.D.N.Y.1959, 170 F.Supp. 477.

cargo such as set forth in the bill of lading herein, is a classical example of a maritime contract. It is well established that a maritime contract carries with it all of its incidents, even though non-maritime, and as such will be subjected to admiralty jurisdiction unless such non-maritime incidents are separable.[8] Thus, if the contract is both maritime and non-maritime and is divisible so that the maritime obligations may be determined separately, consistent with the principles of the law of contracts, the admiralty court will assume jurisdiction *pro tanto*. This was the holding in Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 2 Cir., 1927, 19 F.2d 777, where Judge Learned Hand enforced in admiralty a maritime obligation assumed by the obligor together with many non-maritime obligations under a general assumption agreement, stating (at page 779):

"* * * The mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest."

In that case the doctrine of separability was invoked to enlarge, not to restrict, the jurisdiction of admiralty courts.

More recent cases have also utilized this doctrine in extension of admiralty jurisdiction.[9] On the other hand, there are cases which have invoked the doctrine of separability to restrict admiralty jurisdiction. One group of such cases involved the practice at the turn of the century of loading wheat at Great Lakes ports for shipment to Eastern ports and providing for storage aboard ship either prior or subsequent to transportation. The courts separated the transportation aspects from the storage aspects and refused to enforce the latter in admiralty.[10] Another group of cases involved provisions in charter parties which were of a non-maritime nature wherein the court refused to enforce the non-maritime provisions in admiralty, holding that the same were separable from the maritime provisions.[11] The crucial question is thus proposed. Is the carrier's obligation with respect to the cargo on the pier awaiting shipment non-maritime and, if so, can it be separated from its maritime obligations?

The cargo in this case was received under a dock receipt incorporating the terms of the Luckenbach bill of lading and particularly paragraph 6 thereof, which states that "while on the wharf or in warehouse awaiting shipment" the cargo was at the owner's risk except for

8. 1 Benedict on Admiralty (Sixth Ed.), p. 128; Sword Line, Inc. v. United States, 2 Cir., 1955, 228 F.2d 344, affirmed 1956, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493; Gronvold v. Suryan, D.C.Wash. 1935, 12 F.Supp. 429.

9. Berwind-White Coal Mining Co. v. City of New York, 2 Cir., 1943, 135 F.2d 443; American Stevedores, Inc. v. Porello, 1947, 330 U.S. 446, 67 S.Ct. 847, 91 L. Ed. 1011.

10. Thus, in The Richard Winslow, D.C. Wis.1895, 67 F. 259, and Pillsbury Flour Mills Co. v. Interlake Steamship Co., 2 Cir., 1930, 40 F.2d 439, grain was loaded aboard ship for transportation to Buffalo, there to be stored through the winter. In The Pulaski, D.C.Mich.1888, 33 F. 383, the storage was at Detroit for the winter, with transportation to Buffalo to be made in the spring. In The Pulaski, however, there was provision that the cargo could be unloaded at the shipper's order prior to transportation to Buffalo.

11. In Peck v. Laughlin, D.C.Pa.1879, 19 Fed.Cas. p. 77, No. 10,890, the charter provided that the captain would purchase a cargo of salt and then transport the same. Suit for failure to so purchase the salt was held not to be within admiralty jurisdiction. D. C. Andrews & Company v. United States, 1954, 124 F.Supp. 362, 129 Ct.Cl. 574, dealt with a provision in the charter for certain brokerage commissions. Such commissions being non-maritime in nature, the provision with regard thereto was separated from the maritime contract, and the Court of Claims accepted jurisdiction thereof. See also, Gowanus Storage Co., Inc. v. United States Shipping Board Emergency Fleet Corp., D.C.N.Y. 1921, 271 F. 528.

damages arising from "the fault or negligence of the carrier". This clause is a separate obligation covering goods while at rest on the wharf or warehouse and is not intertwined with the strictly maritime obligations of the carrier.[12] In other words, it can be separated without doing violence to the remainder of the contract. The cargo on the pier which had not yet been loaded was placed in the same category as if it had been in a warehouse awaiting shipment. The obligation of the carrier with respect thereto is similar to that of a warehouseman, and accordingly non-maritime in nature. The Court believes this non-maritime obligation can be enforced without prejudice to the rest of the contract. The case directly in point is Armstrong Cork Co. v. Farrell (The African Moon), D.C.Pa.1948, 81 F.Supp. 848. In that case a fire occurred in the warehouse on the pier while the goods were awaiting shipment. The libelant, suing for damage to the goods, sought to invoke admiralty jurisdiction on the basis that the goods were received by the vessel under a dock receipt requiring the issuance of a bill of lading and were thus covered by a maritime contract. The Court, relying upon Compagnie Francaise, supra, dismissed the libel, stating (at pages 848–849):

"* * * It is equally obvious that the obligations arising before actual loading and while the goods were on the dock are separable from the strictly maritime obligations arising during the actual process of loading or after they had been received in the ships hold. For that reason I am constrained to hold that the obligation sought to be enforced is separable from the maritime features of the contract, and that the court is without jurisdiction to enforce them in admiralty."

In the instant case, the goods had been on the pier for five days before the explosion. How many more days they would have waited on the pier in the absence of the conflagration is not known. Cargo in this posture, however, has been known to remain on piers for weeks and in the case of strikes and other unforeseeable events, for a much longer period.

Luckenbach asserts that Armstrong is inconsistent with the subsequent decision of the same court in North American Smelting Co. v. Moller S.S. Co., D.C.Pa. 1952, 103 F.Supp. 447, reversed 3 Cir., 1953, 204 F.2d 384. That case was an action in admiralty to recover damages for loss of part of a shipment originating in the Philippines and terminating in Philadelphia, Pennsylvania. The loss occurred after the cargo was unloaded on the pier but before it was removed by the consignee. In retaining admiralty jurisdiction, the District Court cited Armstrong without criticism but distinguished it upon the ground that the carrier had a fundamental obligation to deliver the goods to the consignee and had been guilty of negligence before that duty had been discharged. In reversing, the Court of Appeals held that upon discharge of the cargo the carrier was no longer in possession and that under the circumstances the carrier was not negligent in permitting the cargo to remain on the pier without a special guard. The question of admiralty jurisdiction was favorably disposed of in a footnote.[13] Armstrong was not discussed and it cannot be inferred that it was discredited. If any conclusion is to be drawn, a more

---

12. Goods awaiting transshipment or delivery after the carriage has begun may be in a different category. The maritime obligation with respect to the carriage of the goods, however, does not arise until the goods are loaded or are in the process of being loaded on the vessel.

13. Footnote 2 (page 385) reading as follows:
"2. The Appellant raises the question whether this suit is cognizable in admiralty although he does not press the point very hard. We think it is. Ex parte Easton, 1877, 95 U.S. 68, 24 L.Ed. 373; The Eddy, 1866, 5 Wall. 481, 72 U.S. 481, 18 L.Ed. 486." The cases cited do not involve separability.

probable inference would be that the District Court's distinction between the two cases was approved.

It should be noted that Armstrong has been cited without adverse comment by Gilmore and Black, The Law of Admiralty [14] and 1 Benedict on Admiralty (Sixth Ed.) [15] Moreover, the Court cannot agree with Luckenbach that the doctrine of Armstrong is disapproved by Isbrandtsen Company, Inc. v. United States, 2 Cir., 1956, 233 F.2d 184, certiorari denied 352 U.S. 842, 77 S.Ct. 67, 1 L.Ed.2d 59.[16] The other cases it cites [17] are quite distinguishable, with the exception of Rosenthal v. The Louisiana,[18] which case involved a cargo insurance policy, normally a maritime contract, but the insurance was limited to the cargo on the pier awaiting shipment. It can only be said that the case was decided over 80 years ago and before Compagnie Francaise, supra, and Armstrong, supra.

Relying on substance rather than mere form, the Court is of the opinion that the subject matter of Coast's original libel is not cognizable in admiralty and it, therefore, must be dismissed for lack of jurisdiction.

### III·

### The Cross-Libel

■■ Coast having submitted itself to the *in personam* jurisdiction of this Court in admiralty, the dismissal of the original libel does not require the dismissal of the cross-libel [19] which arises from the same transaction,[20] unless the subject matter of the latter is not cognizable in admiralty. Considering then the cross-libel on its merits, the Court finds that, in substance, it is based upon

14. Page 26, n. 95.

15. 1959 Supp. page 43, n. 8 to page 129.

16. That case is clearly distinguishable in that (i) it was decided under the Carriage of Goods by Sea Act, which applies to transportation "in foreign trade", 46 U.S.C.A. § 1300, and (ii) involved loss of cargo occurring after the transportation had commenced. In Isbrandtsen the court held that when a vessel, undergoing dry dock repairs in a port of refuge prior to completing its carriage of goods, places the goods on a pier, a duty to insure those goods becomes "an inseparable incident to the contract of carriage * * *" (Id. 233 F.2d at page 186), under 46 U.S.C.A. § 1303(2), and that a breach of such duty is cognizable in admiralty. A cargo that has never been shipped is in a different category than one the shipment of which has been interrupted or which has been transshipped.

17. New Jersey Steam Navigation Co. v. Merchants Bank, supra, note 7 (dealing with loss of goods aboard ship); Morewood v. Enequist, supra, note 7 (libel for payment under contract of transportation of goods in which a defense of damage aboard ship was interposed); U. S. Shipping Board Emergency Fleet Corp. v. Banque Russo Asiatique London, 3 Cir., 1923, 286 F. 918 (suit for damage); Archawski v. Hanioti, supra, note 7 (suit to recover funds paid for ocean trip when vessel did not sail); Southwestern Sugar & M. Co. v. The Eliza Jane Nicholson, D.C.N.Y.1956, 138 F.Supp. 1 (see infra, 185 F.Supp. 920); The Richelieu, D.C.Md.1928, 27 F. 2d 960 (see infra, 185 F.Supp. 920); Compania Maritima Ador, S.A. v. Navico A.G., D.C.N.Y.1959, 173 F.Supp. 839 (holding a guarantor of a maritime obligation may be sued on his guarantee in admiralty); Mangone v. Moore-McCormack Lines, Inc., D.C.N.Y.1957, 152 F. Supp. 848 (holding that the implied indemnity of a stevedoring company to the ship owner that it will conduct the stevedoring operations aboard the vessel in a proper manner is a maritime contract); Dupuis v. Drytrans, Inc., D.C.N.Y.1957, 150 F.Supp. 436 (facts not stated, the Court holding that an indemnity under the provisions of a time charter is cognizable in admiralty).

18. C.C.La.1889, 37 F. 264.

19. See, Isenberg v. Biddle, 1941, 75 U.S. App.D.C. 100, 125 F.2d 741, 743; Switzer Brothers, Inc. v. Chicago Cardboard Co., 7 Cir., 1958, 252 F.2d 407, 410, 411; Lion Mfg. Corporation v. Chicago Flexible Shaft Co., 7 Cir., 1939, 106 F.2d 930, 933; 3 Moore's Federal Practice 41.

20. Rule 50, Admiralty Rules 28 U.S.C.A.; United States v. Isthmian Steamship Co., 1959, 359 U.S. 314, 319–324, 79 S.Ct. 857, 3 L.Ed.2d 845.

(i) clause 14 of the bill of lading issued pursuant to the dock receipt, (ii) a breach of warranty implied by the general maritime law, and (iii) negligence of Coast with respect to its conduct in shipment of the goods.

Clause 14 of the bill of lading [21] states that the shipper shall be liable for loss or damage to the ship or cargo caused by inflammable and explosive goods shipped without a written disclosure of the nature of the goods. At the outset the question is raised by the cross-respondent whether the word "cargo" as employed in this clause, refers to goods on the dock before laden on the ship. Some cases do indicate that "cargo" means goods laden on the ship and not goods awaiting shipment.[22] Also, definitions of the word "cargo" appearing in law dictionaries, state that the term refers to goods which had been loaded on a ship.[23] In certain places, however, the bill of lading refers to the shipment as goods even after they have been placed aboard. But more important, the dock receipt itself is referred to as a "duplicate *cargo* receipt". After examining the dock receipt and the bill of lading it would appear that the parties intended the word "cargo" to mean not only goods already aboard the vessel but goods intended to be placed aboard the vessel for shipment. Consequently, to limit the applicability of clause 14 only to goods that had been laden upon the ship would be to construe the clause too narrowly.

· ▆ Even though the word "cargo" is thus broadly construed, it appears that clause 14 makes no distinction between the cargo on the vessel and the cargo awaiting shipment on the pier. The two are not separately mentioned or treated. At all events, it is impossible under this clause to separate the shipper's obligation with respect to the cargo while awaiting shipment from his obligation with respect to the cargo while on the vessel. Under these circumstances, this latter obligation apparently is an inseparable incident to a maritime contract over which admiralty has jurisdiction. It is true that such an interpretation produces a paradoxical result where the libel of the shipper against the carrier is not cognizable in admiralty while the cross-libel of the carrier against the shipper with respect to the same cargo on the pier is cognizable in admiralty. It so happens that the parties chose to contract upon those terms and under those conditions.

▆ Luckenbach also relies upon implied warranties and indemnities. Distinction must be made between implied warranties under the contract and implied indemnities for tort liability. The only warranties the Court finds implied from the contractual relationship between the shipper and the carrier are (i) an implied warranty of the suitability for shipment of the packages containing the goods,[24] (ii) an implied warranty that the goods are fit and safe for shipment, unless the shipper has notified the carrier to the contrary,[25] and (iii) those warranties implied from the Carriage of Goods by Sea Act.[26] The cases cited by Luckenbach with respect to implied indemnity apparently refer to indemnities imposed by law upon the shipper, irrespective of the terms of the bill of

21. Supra, note 1.

22. United States v. Dewey, 1903, 188 U.S. 254, 267, 23 S.Ct. 415, 47 L.Ed. 463; See, Endner v. Greco, D.C.N.Y.1880, 3 F. 411, 413.

23. 1 Bouv.Law Dict.Rawle's Third Revision p. 423; Black's Law Dictionary (4th Ed.), page 268; Ballentine, Law Dictionary, page 190; Webster's New International Dictionary of the English Language (2d Ed.), page 406.

24. Eastern Motor Express, Inc. v. A. Maschmeijer, Jr., Inc., 2 Cir., 1957, 247 F. 2d 826, 65 A.L.R.2d 765, certiorari denied 355 U.S. 959, 78 S.Ct. 535, 2 L.Ed.2d 534.

25. Pierce v. Winsor, D.C.Mass., 1861, 19 Fed.Cas. p. 652, No. 11,151.

26. Isbrandtsen Company, Inc. v. United States, supra, 185 F.Supp. 918. Such warranties are not present in this case. Supra, n. 16.

lading, arising out of duty of the shipper to exercise the care that a reasonable man would exercise under the circumstances in shipping its goods. Such indemnities do not impose upon the shipper the absolute liability of warranties and their breach depends upon negligence and sounds in tort.

The Richelieu, D.C.Md.1928, 27 F.2d 960, cited by the cross-libelant as an authority for the implied indemnity obligation outside of the provisions of the bill of lading, was an action apparently in tort for an explosion occurring on navigable waters. The court specifically sets forth the indemnity principle in this language (at page 968):

> "The present situation is governed by the well-established principle that one who delivers goods to a carrier for shipment, whether he be the manufacturer thereof or not, is obligated, if the goods are known to him to be of an inherently dangerous character, or if he, tested by the standard of the *average prudent man*, ought to have had such knowledge, to warn the carrier of such inherent danger, unless the carrier itself knew, or might, by the exercise of ordinary care, have known, of the same." (Emphasis supplied.)

▉▉▉ Southwestern Sugar & M. Co. v. The Eliza Jane Nicholson, 138 F.Supp. 1, the other case cited by the cross-libelant, was an action by a cargo owner against the carrier for damages arising out of a defective shipment. The carrier sought recovery over against the shipper on the ground that the cargo was defective when shipped, which circumstance was not disclosed to the carrier. In overruling the exceptions to the petition, the Court made it clear (at page 3) that "the prayer for relief seeks indemnity, not damages". In other words, the primary action being upon a maritime obligation, the carrier may properly im-

plead a shipper under the implied warranty of fitness of the cargo. That is not this case. In the first place, the carrier does not seek indemnity but seeks damages. In the second place, the indemnity under which it seeks to recover is not an indemnity *ex contractu* but an indemnity *ex delicto* which is imposed by operation of law from the obligation of the shipper to act as a prudent man under the circumstances in performing his obligation to others, whether it arises from contract or otherwise.[27]

This is illustrated by The Wonder, 2 Cir., 1935, 79 F.2d 312, where a suit was brought in admiralty against the City for damages to a tug caused when her propeller picked up a submarine cable lying above, instead of below, the river bed. The cables were laid pursuant to a contract in which the contractor agreed to indemnify the City. The Court refused to permit the City to implead the prime contractor on the basis of the indemnity agreement because it said "the obligation was not maritime and therefore did not come within the jurisdiction of a court of admiralty", holding, however, that both the City and the sub-contractor being joint tort feasors, the City was entitled to contribution under the Admiralty Rule. In Rando v. Luckenbach,[28] this Court in a civil suit based on personal injuries from the same explosion, held that there was no implied warranty or representation arising out of Luckenbach's contract of carriage justifying a claim over against the shipper for damages caused by unsafe goods and that under the circumstances there was no implied contract of indemnity by the shipper to Luckenbach with respect to active negligence charged by third parties in the complaints against Luckenbach. In other words, the claim was founded in negligence.

▉▉▉▉ The Court finds that Luckenbach's claims against Coast based upon

---

27. Barney v. Burstenbinder, Gnl.Term, 1872, 64 Barb.,N.Y., 212; see, also, Restatement of the Law of Torts, ch. 14, § 388, comment *a*.

28. D.C.N.Y.1960, 181 F.Supp. 440, 442. See, also, Bush Terminal Bldg. Co. v. Luckenbach Steamship Co, Inc., Sup.N.Y. Co.1959, 196 N.Y.S.2d 515.

warranties implied in the contract by the general maritime law are limited to warranties with respect to the fitness of packaging and disclosure of the dangerous nature of the shipment. There is no question of packaging in this case and clause 14 of the bill of lading, having expressly covered the subject of dangerous and explosive shipments, negates the existence of any other warranty on the subject implied under the contract and limits by contract the damages recoverable with respect thereto. Concerning implied indemnities claimed by Luckenbach to include death, personal injury and damages to other property as well as to the cargo, these, as indicated above, are based upon the failure of the shipper to use due care under the circumstances and are extra-contractual.[29] As to the jurisdiction of admiralty over torts, it is well settled that the location of the tort is the controlling factor.[30] The only question remaining is whether or not the torts covered by such indemnities are terrene or maritime in nature. There is no question that the torts alleged herein occurred on land and are non-maritime.

Applying the law from the foregoing authorities, the Court concludes that (i) it has admiralty jurisdiction over the cross-libel with respect to the alleged breach by Coast of the contractual obligation of indemnity contained in clause 14 of the bill of lading; (ii) any other warranty with respect to disclosure of dangerous shipments which might have been implied under the contract by the general maritime law was merged into the express indemnity in clause 14, and (iii) the claims of cross-libelant for indemnity with respect to death, personal injuries and damage to property other than the cargo arising under any indemnities implied by the general maritime law are based upon negligence covering torts which have occurred on land

and are not cognizable in admiralty.[31] The cross-libel is, therefore, dismissed with leave to amend in accordance with this opinion. Settle order within ten days on two days' notice.

### On Reargument.

Reargument of a motion to dismiss the cross-libel, wherein the libelant-cross-respondent asserted that the Court had no jurisdiction over the subject-matter of its libel. The facts set forth in the opinion on that motion need not be here repeated.

The Court's prior opinion involved the determination of certain debatable issues with respect to which there were conflicting authorities. One of the more important issues was the jurisdiction of the Admiralty Court over the subject-matter of the original libel based upon a claim for damages to the cargo delivered by Coast Manufacturing & Supply Company (hereinafter referred to as "Coast") while on dock awaiting shipment by Luckenbach Steamship Company, Inc. (hereinafter referred to as "Luckenbach"). The question presented was whether the obligation of Luckenbach as a warehouseman during this period was a non-maritime obligation separable from the maritime contract of carriage embodied in the bill of lading. This is an issue upon which reasonable men can reasonably differ. The Court held that under the terms of the bill of lading the obligation was a separable non-maritime obligation over which the Admiralty Court had no jurisdiction, citing Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 2 Cir., 1927, 19 F.2d 777, Armstrong Cork Co. v. Farrell (The African Moon), D.C.Pa. 1948, 81 F.Supp. 848, and certain other cases which involved storage of grain by the carrier before and after ship-

---

29. See claims set forth in paragraphs Eighth and Ninth of the Cross-libel expressly accusing Coast of negligence.

30. See, DeLovio v. Boit, C.C.Mass.1815, 7 Fed.Cas. 418, No. 3,776; Westfall Lar-

son & Co. v. Allman-Hubble Tug Boat Co., 9 Cir., 1934, 73 F.2d 200, 201.

31. Whether these claims are also limited by the contractual obligation in clause 14 of the bill of lading is unnecessary for this Court to decide upon this motion.

ment[1] (hereinafter referred to as the "Grain Cases"). While the Armstrong case was directly in point and held that the obligation was non-maritime and separable, the other cases were distinguishable.[2] After further consideration of the authorities and the principle enunciated in the original decision that "it is well established that a maritime contract carries with it all of its incidents, even though non-maritime, and as such will be subjected to admiralty jurisdiction unless such non-maritime incidents are separable"[3], the Court has reached a different conclusion. In so doing it does not question the validity of the principle laid down in Bonnasse and the "Grain Cases" (supra). The uncertainty lies in the application of that principle and the difficulty in measuring the extent and degree to which a non-maritime obligation is incident to a maritime contract of shipment and hence inseparable. The contract here was a traditional maritime contract of shipment. When cargo is delivered on the dock pursuant thereto, it appears to be unrealistic to construe the carrier's obligation as requiring it to immediately load and transport the cargo. It is almost invariable that some time must and does elapse before loading. Indeed, the terms of the bill of lading describing the obligation of the carrier while the cargo is awaiting shipment, expressly contemplates delay which in the ordinary case is obviously an incident to the maritime obligation of carriage, even though the carrier characterizes his obligation during that period as that of a warehouseman. If the obligation of the carrier with respect to the cargo awaiting shipment was so far removed from its obligation to carry as to be patently separable or was more than an incident to transportation, the result would be different. (See "Grain Cases", supra.) Cross-libelant cited many cases to support its position. In none was the question of jurisdiction raised except Rosenthal v. The Louisiana, C.C.La.1889, 37 F. 264, which is directly apposite.[4] In viewing the obligations of the carrier as a whole under its maritime contract the Court concludes that the guidance of Rosenthal is preferable to the guidance of Armstrong. Hence the Court is of the opinion that Luckenbach's obligation with respect to the cargo awaiting shipment on the wharf was an incident to and inseparable from its maritime contract. It follows that service of the cross-libel on Bigham, Englar, Jones & Houston, proctors for libelant, constituted valid service on Coast (E.D.Admiralty Rule 17).

The remaining issues are more easily resolved. Luckenbach questions the Court's statements that the implied warranty of fitness of goods for shipment merged into clause 14 of the bill of lading, that there was no issue of a warranty of fitness of containers in the case, and that the indemnity it asserted arose *ex delictu* and not *ex contractu*[5]. The only issue before the Court on this motion is one of admiralty jurisdiction based upon Luckenbach's pleading. Consequently it is only necessary to determine whether the warranties or in-

---

1. The Pulaski, D.C.Mich.1888, 33 F. 383; The Richard Winslow, D.C.Wis.1895, 67 F. 259; and Pillsbury Flour Mills Co. v. Interlake Steamship Co., 2 Cir., 1930, 40 F.2d 439.

2. In the "Grain Cases" the storage was clearly separable from the transportation and in the Bonnasse case the maritime obligation had no relation whatsoever to the non-maritime obligation and was likewise clearly separable.

3. 1 Benedict on Admiralty (Sixth Ed.) p. 128; Sword Line, Inc. v. United States, 2 Cir., 1955, 228 F.2d 344, affirmed 1956, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493; Gronvold v. Suryan, D.C.Wash. 1935, 12 F.Supp. 429.

4. See, also, North American Smelting Co. v. Moller S.S. Co., D.C.Pa.1952, 103 F. Supp. 447, reversed 3 Cir., 1953, 204 F. 2d 384.

5. The Richelieu, D.C.Md.1928, 27 F.2d 960, 968; Barney v. Burnstenbinder, N.Y. Gen.Term 1872, 64 Barb. 212.

demnities asserted by Luckenbach are maritime in nature.

 Luckenbach contends that the statement that the merger of the warranty of fitness of goods into clause 14 of the bill of lading might deprive Luckenbach of its right to plead that such warranty embraces actions for personal injuries and death, under the doctrine of the English Case of Bamfield v. Goole & Sheffield Transport Co., [1910] 2 K.B. 94. Without considering the merits of this claim it is sufficient to state that the Court's remarks as to such merger were unnecessary to the determination of the issue of jurisdiction, and should not have been included in the prior opinion. If such an implied warranty (and the indemnity ensuing therefrom) exists, it exists as an incident to a maritime contract and is cognizable in admiralty. However such implied warranty was not pleaded by Luckenbach. The same is true of the statement concerning the implied warranty of fitness of packaging which Luckenbach now queries. In the absence of any contrary indication in the pleadings the Court properly stated that there was no issue of improper packaging. If Luckenbach now feels prejudiced by this discussion and wishes to amend the cross-libel it may do so and plead these or any other implied warranties. Hence its oral application on the reargument for leave to amend will be granted.

The Court stated in its prior opinion that the implied maritime indemnity relied upon by Luckenbach (other than the indemnity which might be implied from the bill of lading) arose *ex delictu* and not *ex contractu*. Based upon Luckenbach's omnibus pleading of *ex delictu* liability in paragraphs "Seventh" through "Ninth" inclusive of the cross-libel, this was a necessary conclusion. The Court's expression on this issue was predicated upon and limited by those allegations. Paragraphs "Seventh" through "Ninth" are jurisdictionally defective and consequently must be stricken as not being within the cognizance of the Admiralty Court. Prior leave having been granted to plead implied warranties, such leave will be deemed to include permission to plead the implied indemnities arising therefrom.

This opinion shall supersede any inconsistent determinations or discussion in the prior opinion.

The application to dismiss the original libel is denied. The motion to dismiss the cross-libel is denied, except as above indicated. This decision makes it unnecessary to consider the other issues raised upon the reargument.

Settle order on two (2) days' notice.